# STATE OF MICHIGAN

# COURT OF APPEALS

SUSANA E. NARVAEZ TERAN,

Plaintiff-Appellee,

v

MICHAEL R. RITTLEY,

Defendant-Appellant.

FOR PUBLICATION
November 17, 2015
9:05 a.m.

No. 322016
Otsego Circuit Court
LC No. 10-013744-DP

Before: MARKEY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

In this paternity case, defendant appeals by right the trial court's September 24, 2013 order setting defendant's child support obligation at $1,211 per month and also the trial court's May 14, 2014 order awarding plaintiff attorney fees. We conclude that the trial court possessed subject-matter jurisdiction, and did not abuse its discretion in establishing the amount of child support, making it retroactive, or in awarding attorney fees. Accordingly, we affirm.

## I. SUMMARY OF FACTS AND PROCEEDINGS

In 2006, while defendant was in the military and stationed abroad in Ecuador, he fathered a child with plaintiff that was born November 18, 2006, in Quito, Ecuador. Defendant left Ecuador shortly after the child was born and did not leave plaintiff any contact information.

In July 2007, plaintiff sued defendant for child support in the Commonwealth of Virginia. Defendant, represented by counsel, submitted to the Virginia court a Michigan driver's license and asserted that his official residence was in Johannesburg, Michigan, in Otsego County, where he had paid taxes since 1982. The Virginia court dismissed the complaint for lack of jurisdiction on February 7, 2008.

On September 30, 2010, plaintiff filed the instant paternity action to determine custody, parental responsibility, and child support. Defendant, through counsel, filed an appearance on December 23, 2010. The trial court permitted both parties to appear telephonically at scheduled hearings. A stipulated order for paternity testing was entered on April 25, 2011. Subsequently, DNA testing was performed on samples from the parties and the child. The results of this testing were that defendant could not be excluded as the child's father and the probably that defendant was, in fact, the child's father was reported to be 99.99 percent. On August 26, 2011, pursuant to the parties' stipulation, an order of filiation was entered and the matter was referred to the friend

-1-

of the court (FOC), for an investigation regarding child support. Using $22,892 for plaintiff's gross income and $109,774 for defendant's gross income, the FOC recommended setting defendant's child support obligation at $1,211 per month.

On March 29, 2012, defendant filed a motion to dismiss, asserting that the trial court lacked subject-matter jurisdiction pursuant to MCL 722.714 because none of the parties or the child resided in Michigan. In an affidavit, defendant asserted that he had resided in Washington, D.C. from May to September 2007; in Bolivia from September 2007 to July 2009; in Washington, D.C. from July to September 2009; in Frankfort, Germany from September 2009 to June 2011; in Virginia from June of 2011 to present; and that he never intended to reside in Michigan after 2007. The trial court held a hearing on the motion on April 16, 2012.

On May 22, 2012, the trial court issued an opinion and order denying defendant's motion to dismiss. The trial court ruled that it possessed subject-matter jurisdiction over an action to identify the father of a child born out of wedlock, reasoning that the language in MCL 722.714 (governing paternity actions) was similar to that in MCL 722.26 (governing child custody actions), and that because MCL 722.26 concerns venue, not jurisdiction, MCL 722.714 likewise concerns venue, not jurisdiction. Specifically, the court noted that MCL 722.714 "provides that an action for paternity 'shall be filed in the county where the mother or child resides. If both the mother and child reside outside of this state, then the complaint shall be filed in the county where the putative father resides or is found.' " *Id*. (quotations added). The court further observed that "[t]he fact that the child was conceived or born outside of this state is not a bar to entering a complaint against the putative father." MCL 722.714(1). The trial court ruled, citing *Altman v Nelson*, 197 Mich App 467, 473-474; 495 NW2d 826 (1992), that the Paternity Act conferred subject-matter jurisdiction on the circuit court to identify the father of a child born out of wedlock. The court also ruled that even if venue were improper, it would not defeat the court's subject-matter jurisdiction, citing *Morrison v Richerson*, 198 Mich App 202, 206-208; 497 NW2d 506 (1992).

In May 2013, the court conducted a two-day trial regarding child support at which both plaintiff and defendant testified via telephone. The main issues were the amount of child support and whether the court should deviate from the child support formula because plaintiff and the child lived in Ecuador. Defendant presented the testimony of Dr. Stan Smith, Ph.D. (University of Chicago), who the trial court recognized as an expert in economics. Smith testified that he examined the cost of living in Quito, Ecuador and Washington, D.C., and converted the costs of living in those cities to the cost of living in Detroit, Michigan. According to Smith, plaintiff's income of $22,900 in Quito equated to $36,914 in purchasing power in Michigan, and defendant's income of $127,000 in Washington, D.C. equated to $89,557 of purchasing power in Michigan. Using this determination of the respective purchasing power of the parties' income in Michigan dollars ($36,914 and $89,557), Smith calculated that the amount of child support should be $1,021 per month. Smith further testified that in order to achieve the equivalent $1,021 purchasing power in Michigan, a person in Ecuador would need only $634.00 (as of January 2012) or $567.00 (as of May 2013).

On September 24, 2013, the trial court issued a written opinion and order setting the amount of child support at $1,211 per month, as the FOC had recommended. The trial court first rejected defendant's argument that it would not be a deviation to reduce the formula-

recommended child support consistent with Dr. Smith's testimony regarding the relative purchasing power in different locals. The trial court next rejected defendant's substantive arguments that a deviation from the child support formula was warranted. The court first found that defendant's arguments partially failed for lack of proof because defendant had not presented any evidence of the difference in cost of living between Ecuador and El Salvador, where defendant then resided. The trial court next discussed whether it would deviate from the child support formula for the time period between July 2011 and July 2012, when defendant *was* living in Washington, D.C. The court reviewed caselaw from other jurisdictions, finding the reasoning of a Maryland decision, *Gladis v Gladisova*, 382 Md 654; 856 A2d 703 (2004), the most persuasive. The court also noted that our Supreme Court in *Verbeke v Verbeke*, 352 Mich 632; 90 NW2d 489 (1985), decided before the current statutory scheme of the child support formula, had rejected international variations in the cost of living as a basis for modifying child support.

The trial court reasoned that defendant's proposal would be administratively unworkable, with many cases dependent on expert testimony, place undue burdens on litigants and the judicial system, and delay entry of support orders. Second, the court reasoned that child support should not depend on its parents' choice of residence but on the economic ability of the child's parents to provide support. The court also noted that a parent or child's cost of living based on geographic location has not been made an explicit factor that could serve as a basis to justify a deviation from the child support formula. The trial court therefore ruled that it would not consider the cost of living at various locals as a factor in establishing child support.[1]

Subsequently, plaintiff moved the court to make the support order retroactive and for an order requiring defendant to pay attorney fees. The trial court held a hearing on the motions on March 7, 2014. As to retroactivity, the court ruled from the bench that starting support from the time of the Virginia case was appropriate under MCL 722.717(2)(a) or (c). The trial court's order of May 14, 2014 provided that child support would be retroactive to February 7, 2008, the day the Virginia case was dismissed. The trial court also ruled that it would award plaintiff $23,000 in attorney fees, payable to plaintiff's Michigan attorney, which included part of the expense of a Florida attorney, Paul Finizio, who assisted in prosecuting the case. The trial court's May 14, 2014 order requires defendant to pay plaintiff's Michigan lawyer $23,000, less whatever defendant had already paid pursuant to earlier orders of the court.

As noted, defendant appeals by right, contending the trial court lacked subject-matter jurisdiction, and if it did have subject-matter jurisdiction, abused its discretion in establishing the amount of support, making it retroactive, and in the amount of attorney fees awarded.

## II. SUBJECT-MATTER JURISDICTION

### A. STANDARD OF REVIEW

---

[1] In a footnote, the court also indicated that "[i]n the event that the Court did consider the geographical cost of living as a factor . . . , the Court would not find it necessary to stray from the child support formula because the amount of support is neither unjust nor inappropriate."

Whether a court has subject-matter jurisdiction is a question of law that this Court reviews de novo. *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 98; 693 NW2d 170 (2005). A jurisdictional defect may be raised at any time. *Id*. at 97.

## B. DISCUSSION

We find defendant's argument that the circuit court lacked subject-matter jurisdiction over plaintiff's paternity action is without merit. Nothing in MCL 722.714 expressly limits the circuit court's subject-matter jurisdiction. Indeed, the Paternity Act patently grants the circuit court subject-matter to determine the paternity of a child born out of wedlock and to order child support. *LME v ARS*, 261 Mich App 273, 278-279; 680 NW2d 902 (2004); see also *Altman*, 197 Mich App at 473-474, and *Morrison*, 198 Mich App at 207, cited by the trial court.

Subject-matter jurisdiction "is the right of the court to exercise judicial power over a class of cases, not the particular case before it." *Grebner v Oakland Co Clerk*, 220 Mich App 513, 516; 560 NW2d 351 (1996). "It is the abstract power to try a case of the kind or character of the one pending, but not to determine whether the particular case is one that presents a cause of action or, under the particular facts, is triable before the court in which it is pending." *Id*. The Legislature has conferred subject-matter jurisdiction on circuit courts as follows:

> Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state. [MCL 600.605.]

Thus, the circuit court is presumed to have subject-matter jurisdiction over a civil action unless Michigan's Constitution or a statute expressly prohibits it from exercising jurisdiction or gives exclusive jurisdiction over the subject matter of the suit to another court. *Id*.; *In re Wayne Co Treasurer*, 265 Mich App 285, 291; 698 NW2d 879 (2005).

Nevertheless, defendant argues the circuit court does not have subject-matter jurisdiction to identify the father of a child born out of wedlock and award child support when the father, mother and child all reside outside of Michigan. In support of his argument, defendant asserts that MCL 722.714(1) sets jurisdictional requirements that are not met when neither the father, mother, nor child reside in Michigan. Defendant relies on the part of MCL 722.714(1) that states: "A complaint shall be filed in the county where the mother or child resides. If both the mother and child reside outside of this state, then the complaint shall be filed in the county where the putative father resides or is found." Like the trial court, we find this argument unavailing.

MCL 722.714(1) does not expressly limit the circuit court's subject-matter jurisdiction. Rather, this section concerns venue and instructs where a paternity action should be filed. As the trial court noted, the language in MCL 722.714(1) is very similar to that in MCL 722.26(2) concerning child custody, which states:

> Except as otherwise provided in section 6b or 6e, if the circuit court of this state does not have prior continuing jurisdiction over a child, the action shall be submitted to the circuit court of the county where the child resides or may be found by complaint or complaint and motion for order to show cause.

-4-

This Court has held that MCL 722.26(2) addresses venue, not jurisdiction. See *In re McDonald*, 74 Mich App 119, 123 n 1; 253 NW2d 678 (1977), and *Kubiak v Steen*, 51 Mich App 408; 215 NW2d 195 (1974).

Defendant asserts that MCL 722.714(1) is analogous to MCL 552.9(1), which is jurisdictional with respect to an action for divorce. In *Stamadianos v Stamadianos*, 425 Mich 1, 7-8; 385 NW2d 604 (1986), our Supreme Court held that the 180- and 10-day residency requirements of MCL 552.9(1) were jurisdictional.[2]

Defendant's argument is without merit. The language used in MCL 552.9(1) is very different than the language used in MCL 722.714(1). MCL 552.9(1) uses restrictive language, informing a trial court that it *shall not* grant a judgment of divorce unless the residency requirement is met. This is an express prohibition. In contrast, MCL 722.714(1) contains no such express prohibition on the circuit court. Rather, it merely instructs the plaintiff where to properly file a complaint under different circumstances.

Moreover, defendant's argument is premised on him not residing in Michigan, but the statute on which he relies also states that a paternity complaint is properly filed "in the county where the putative father resides or is found." MCL 722.714(1). Thus, even if defendant were correct that the statute were jurisdictional, and even if defendant did not "reside" in Otsego County, his argument would still fail because he has not presented any argument that he was not "found" in Otsego County. Indeed, defendant was, in fact, "found" in Otsego County, and he voluntarily entered his appearance in this action thereby submitting to the personal jurisdiction of the circuit court, which possessed subject-matter jurisdiction over the issues raised in the lawsuit. *LME*, 261 Mich App at 278-279. Defendant waived any issue with respect to personal jurisdiction when he failed to raise it in his first responsive pleading. MCR 2.116(D)(1).

### III. ATTORNEY FEES

### A. STANDARD OF REVIEW

We review a trial court's "decision whether to award attorney fees and the determination of the reasonableness of the fees for an abuse of discretion." *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). We review a trial court's findings of fact underlying the award of attorney fees for clear error and review any underlying issues of law de novo. *Id*. A trial court abuses its discretion when it selects an outcome that is outside the range of reasonable and principled outcomes. *Id*.

### B. DISCUSSION

---

[2] MCL 552.9(1) states in pertinent part that "[a] judgment of divorce shall not be granted by a court in this state in an action for divorce unless the complainant or defendant has resided in this state for 180 days immediately preceding the filing of the complaint and . . . the complainant or defendant has resided in the county in which the complaint is filed for 10 days immediately preceding the filing of the complaint."

Plaintiff initially hired Paul Finizio, a Spanish-speaking attorney with an office in Ft. Lauderdale, Florida, to help her obtain child support from defendant. Finizio found Jodi Doak, the attorney of record in the instant case, to represent plaintiff in Michigan. Finizio did not file an appearance in the instant case. On August 16, 2011, plaintiff moved for a temporary award of attorney fees, attaching statements for services from Finizio and Doak. On January 3, 2012, the trial court ordered defendant to pay $13,800 in plaintiff's attorney fees and costs, less $2500 defendant had already been paid, and the balance payable at a rate of $750 a month. This order also required defendant to pay $4000 for an expert.

Following trial, Doak again moved the court for an order for payment of attorney fees. Doak asserted the total amount due for her and Finizio's services was $35,000, of which $14,000 had been paid. Plaintiff provided the court with detailed billing statements for Doak and Finizio. According to Finizio's statement, he had billed approximately $19,500 and was owed approximately $11,500.[3] According to Doak's statement, she had billed approximately $15,300 and was owed approximately $9,600.[4] The trial court ordered defendant to pay plaintiff $23,000 in attorney fees less any payments defendant had already made.

Defendant's primary argument is that the court abused its discretion when it ordered defendant to pay attorney fees of $23,000.00 because Doak's fee was only $15,326 and Finizio is not entitled to attorney fees when he never appeared in this case and there is no evidence that he was necessary. Additionally, defendant argues that an individual with plaintiff's income should not be entitled to 100% reimbursement for all of her attorney fees. We disagree.

Generally, under the "American rule," attorney fees are not recoverable in the absence of a statute, court rule or common law exception that provides to the contrary. *Dessart v Burak*, 470 Mich 37, 42; 678 NW2d 615 (2004). MCR 3.206(C)(2) permits a court to award attorney fees in a domestic relations action where the party requesting the fees alleges "facts sufficient to show that the party is unable to bear the expense of the action, and that the other party is able to pay[.]" "The party requesting the attorney fees has the burden of showing facts sufficient to justify the award." *Borowsky v Borowsky*, 273 Mich App 666, 687; 733 NW2d 71 (2007).

In this case, plaintiff testified that she earned $23,000 a year ($1916 a month) and her monthly expenses included $400 for her daughter's school, $400 for rent, $600 for food, and $450 for child care. In contrast, defendant testified that he made approximately $127,000 a year, owned a house in Washington, D.C. that he rented, and the government paid his housing and other expenses in San Salvador. Under these circumstances, we conclude that the trial court did not clearly err in finding that plaintiff was unable to bear the expense of the action and that defendant had the ability to pay. MCR 3.206(C)(2).

---

[3] Plaintiff herself had paid Finizio approximately $8,000.

[4] At the time of the hearing, defendant had paid Doak at least $2,500. Additionally, plaintiff's expert witness fee was only $2,000, but defendant had been ordered to pay $4000 to help plaintiff hire an expert. Doak applied the $2,000 unspent expert witness fee to her fees. Thus, defendant had paid at least $4,500 of Doak's fees at the time of the hearing.

We also conclude that the trial court did not abuse its discretion by including in a reasonable attorney fee payable to Doak the partial reimbursement of expenses plaintiff incurred using Finizio's services. We note that "there exists no precise formula by which a court may assess the reasonableness of an attorney fee" and that one factor to consider it establishing a reasonable attorney fee is "the expense[s] incurred." *Temple Marital Trust*, 278 Mich App at 138. Thus, the expense of staff and other overhead are included in the determination of what constitutes a reasonable attorney fee, as this Court has observed:

> Clearly, attorney fees are not meant to compensate only work performed personally by members of the bar. Rather, the term must refer to a reasonable fee for the work product of an attorney that necessarily includes support staff. The rule allowing an award of attorney fees has traditionally anticipated the allowance of a fee sufficient to cover the office overhead of an attorney together with a reasonable profit. The inclusion of factor 5, *the expenses incurred*, reflects the traditional understanding that attorney fees should be sufficient to recoup at least a portion of overhead costs. . . . Thus, until a statute or a court rule specifies otherwise, the attorney fees must take into account the work not only of attorneys, but also of secretaries, messengers, *paralegals*, and others whose labor contributes to the work product for which an attorney bills a client, and it must also take account of other expenses and profit. [*Allard v State Farm Ins Co*, 271 Mich App 394, 404-405; 722 NW2d 268 (2006), quoting *Joerger v Gordon Food Service, Inc*, 224 Mich App 167, 181-182; 568 NW2d 365 (1997).]

We conclude on the basis of our review of the record that the trial court did not clearly err in finding that plaintiff's retention of Finizio was a necessary expense. Indeed, it appears highly probable, given the complexity of the case involving both international and language barriers, that this action might never have come to fruition without Finizio's involvement. Finizio successfully found an attorney to represent plaintiff in Michigan, and the record supports that a Spanish-speaking attorney was necessary in order to successfully communicate legal issues with plaintiff. Accordingly, the trial court did not abuse its discretion in awarding attorney fees in an amount that at least partially included the expense of utilizing Finizio's services.

We specifically reject defendant's argument that the trial court erred because Finizio did not enter an appearance in this case. As discussed already, the trial court did not order defendant to pay Finizio's fee directly but only used the expenses plaintiff incurred by retaining Finizio as part of its determination of a reasonable attorney fee award payable to Doak. Moreover, in *Escanaba & Lake Superior R Co v Keweenaw Land Assn, Ltd*, 156 Mich App 804, 815-816; 402 NW2d 505 (1986), this Court rejected a per se rule excluding an award of fees to an out-of-state attorney that does not file an appearance in a case, explaining as follows:

> The question is not whether the law firm retained is in-state or out-of-state; the question is whether retention of the firm is necessary. It is the trial court's duty to determine whether retention of the firm was necessary. Absent an abuse of discretion, the decision of the trial court should not be reversed. Just because the firm employed is out-of-state does not make retention unnecessary. Accordingly, we decline to rule that it is prima facie unreasonable to award attorney fees to out-of-state counsel.

In sum, we conclude that the trial court did not clearly err in finding that plaintiff's retention of Finizio was a necessary expense, and did not abuse its discretion in awarding Doak attorney fees in an amount that at least partially included the expense of Finizio's services.

## IV. RETROACTIVE CHILD SUPPORT

### A. STANDARD OF REVIEW

We review child support orders to determine if the trial court abused its discretion. *Holmes v Holmes*, 281 Mich App 575, 586; 760 NW2d 300 (2008). The trial court abuses its discretion when it selects an outcome that is outside the range of reasonable and principled outcomes. *Ewald v Ewald*, 292 Mich App 706, 715; 810 NW2d 396 (2011). While we review any of the trial court's findings of fact for clear error, *id*. at 714, we review de novo the trial court's ruling to the extent that it involves statutory construction. *Holmes*, 281 Mich App at 587.

### B. DISCUSSION

The trial court did not abuse its discretion in commencing defendant's child support obligation as of the date the Virginia support action was dismissed on February 7, 2008. The retroactive child support order was permitted by MCL 722.717(2), which states, in pertinent part:

A child support obligation is only retroactive to the date that the paternity complaint was filed unless any of the following circumstances exist:

(a) The defendant was avoiding service of process.

(b) The defendant threatened or coerced through domestic violence or other means the complainant not to file a proceeding under this act.

(c) The defendant otherwise delayed the imposition of a support obligation.

In this case, the trial court determined that both subsection (a) and subsection (b) applied. We find it unnecessary to determine whether the trial court clearly erred in finding that defendant was avoiding service of process because the record supports the trial court's conclusion that "defendant otherwise delayed the imposition of a support obligation," MCL 722.717(2)(c), by seeking and obtaining dismissal of the Virginia child support action. Accordingly, the trial court did not abuse its discretion in ordering that defendant's child support obligation commence as of the date the Virginia child support action was dismissed on February 7, 2008.

## V. DEVIATION FROM THE CHILD SUPPORT FORMULA

### A. STANDARD OF REVIEW

A trial court must presumptively follow the Michigan Child Support Formula (MCSF), when determining the child support obligation of parents. *Ewald*, 292 Mich App at 714. "This Court reviews de novo as a question of law whether the trial court has properly applied the MCSF." *Id*. Any factual findings of the trial court underlying its determination regarding child

support are reviewed for clear error, and any discretionary rulings that statute or the MCSF permits are reviewed for an abuse of that discretion. *Id*. at 714-715.

## B. DISCUSSION

Defendant asserts that the trial court erred by not deviating from the MCSF recommended child support on the basis of the relative cost of living between where the child resides and where defendant, the support payer, resides. As an issue of first impression, we hold that the trial court may not as a general rule deviate from the MCSF recommended child support on the basis of the general cost of living of where the parents and child reside. We also conclude that the trial court did not abuse its discretion by finding that the MCSF recommended child support was not "unjust or inappropriate" as required by MCL 552.605(2) to support a deviation.

In setting the amount of child support, the Legislature has required that a trial court must generally follow the formula developed by the state Friend of the Court Bureau:

> Except as otherwise provided in this section, the court shall order child support in an amount determined by application of the child support formula developed by the state friend of the court bureau as required in section 19 of the friend of the court act, MCL 552.519. The court may enter an order that deviates from the formula *if the court determines from the facts of the case that application of the child support formula would be unjust or inappropriate* and sets forth in writing or on the record all of the following:
>
> > (a) The child support amount determined by application of the child support formula.
> >
> > (b) How the child support order deviates from the child support formula.
> >
> > (c) The value of property or other support awarded instead of the payment of child support, if applicable.
> >
> > (d) The reasons why application of the child support formula would be unjust or inappropriate in the case. [MCL 552.605(2) (emphasis added).]

As the trial court recognized, other jurisdictions are split on the issue of whether differences in cost of living based on geographic location should be a factor in determining child support. In *Gladis*, 382 Md at 657, the father lived in the United States and the mother and child lived in the Slovak Republic. The trial court concluded that applying the Maryland child support guidelines was "inappropriate when there is a wide disparity in the cost of living," and therefore reduced the amount of the monthly award from $497 to $225. *Id.* at 660.[5] The mother filed a

---

[5] Similar to Michigan, in Maryland, the amount of child support that results from the application of the Maryland child support guidelines is presumed to be correct, but may be rebutted by evidence demonstrating that the result under the guidelines would "be unjust or inappropriate in a particular case." *Gladis*, 382 Md at 664. If the trial court determines that the guidelines

motion to amend that decision, which was heard by a different judge who ordered the father to pay $497 per month in accordance with the guidelines. *Id.* at 661. Maryland's highest appellate court, the Maryland Court of Appeals, issued a writ of certiorari to the Court of Special Appeals, to consider the case. *Id.*

After recognizing the conflicting views among state courts that have addressed the issue, the Maryland Court of Appeals in *Gladis*, 382 Md at 665-668, held "that the better position is to prohibit courts from deviating from the Guidelines based on the standards of living in different areas," *id.* at 668.[6] The court reasoned that the Maryland legislature did not explicitly make the standards of living in relevant geographic areas part of the child support formula, that the child should enjoy the standard of living that he or she would have enjoyed if the child's parents were together, and that there is nothing wrong with a child support award that would allow a child to enjoy an above-average standard of living that corresponds with the economic circumstances of the child's parent. *Id.* at 668-669. The court also recognized that permitting the trial court to consider the cost of living on a case-by-case basis would create more frequent deviations from the child support guidelines, and frustrate the purposes of requiring courts to utilize the guidelines, which were to ensure that child support awards meet the needs of children, to improve the consistency and equity of awards, and to improve the efficiency of adjudicating child support issues. *Id.* at 668-670.

In contrast, other jurisdictions have allowed differences in cost of living to be a proper factor in determining whether to deviate from child support guidelines. In *People ex rel AK*, 72 P3d 402, 404 (Colo App, 2003), the court found that the trial court erred in not considering whether the differing living expenses in Colorado and Russia would render applying the guidelines "inequitable, unjust, or inappropriate," and remanded the case to the trial court for this consideration. *Id.* at 405. Similarly, in *Booth v Booth*, 44 Ohio St 3d 142; 541 NE2d 1028 (1989), the Supreme Court of Ohio addressed whether the trial court erred in deviating from the child support guidelines because of the "substantial difference" in the parents' costs of living in New York and Ohio. The court found that the trial court did not abuse its discretion in deviating from the guidelines, and explained that after "a careful review of the facts and circumstances of this cause, we find that the child support order herein was proper in all respects, and was neither unreasonable, arbitrary nor unconscionable." *Id.* at 144.

Like the trial court, we agree that the reasoning of the Maryland Court of Appeals in *Gladis* is persuasive. But, more important, principles of statutory construction dictate that we

establish an unjust or inappropriate child support amount and then awards an amount of child support that departs from the guidelines, it is required to "make a written finding or specific finding on the record stating the reasons for departing from the guidelines," which at a minimum must include what the award would have been under the guidelines, how the award varies from the guidelines, and how the finding serves the best interest of the child. *Id.* at 664-665.

[6] The Maryland court frequently used the phrase "standards of living" to refer to the variation in the "costs of living" in different geographic locations. The Court stated early in its opinion that the lower court in ordering the guidelines-recommended amount of child support did not abuse its discretion for the reason "a lower cost of living in the child's locality is not a proper basis for deviating" from Maryland's child support guidelines. *Gladis*, 382 Md at 662.

affirm the trial court. This Court summarized the pertinent principles of statutory construction in *Polkton Twp*, 265 Mich App at 101-102 (citations omitted):

> The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. The first criterion in determining intent is the specific language of the statute. The Legislature is presumed to have intended the meaning it plainly expressed. Nothing will be read into a clear statute that is not within the manifest intention of the Legislature as derived from the language of the statute itself.

Neither the Legislature, in MCL 552.605(2), nor the Friend of the Court Bureau, which is tasked with developing the MCSF "based upon the needs of the child and the actual resources of each parent," MCL 552.519(3)(a)(vi), has specifically included geographic variations in the cost of living as a factor that may justify deviation from the MCSF recommended child support amount. See 2013 MCSF 104(D); *Ewald*, 292 Mich App at 715-718. The statute is clear: "*Except as otherwise provided in this section,* the court *shall* order child support in an amount determined by application of the child support formula developed by the state friend of the court bureau as required in section 19 of the friend of the court act, MCL 552.519." MCL 552.605(2) (emphasis added). Nothing in the plain language of the statute or the MCSF indicates a manifest intent to permit geographic variations in the cost of living to justify deviating from the MCSF recommended child support amount. *Polkton Twp*, 265 Mich App at 102.

Both our Supreme Court and this Court have repeatedly held that the provisions of the MCSF are mandatory and that any deviation must be justified by strict compliance with the procedures of MCL 552.605(2). See e.g., *Diez v Davey*, 307 Mich App 366, 376; 861 NW2d 323 (2014) ("excepting those factual instances in which application of the MCSF would be unjust or inappropriate, a parent's child support contribution is determined by use of the MCSF"); *Ewald*, 292 Mich App at 715-716 (the statutory criteria for deviating from the MCSF are mandatory); *Ghidotti v Barber*, 459 Mich 189, 200; 586 NW2d 883 (1998) ("In the absence of circumstances that make a determination 'unjust or inappropriate,' the court may not deviate from the formula."); *Burba v Burba (After Remand)*, 461 Mich 637, 644; 610 NW2d 873 (2000) ("the criteria for deviating from the formula are mandatory"). In this case, the trial court, after conducting an evidentiary hearing, determined that the formula recommended child support was not "unjust or inappropriate." MCL 552.605(2). We are not left with a definite and firm conviction that the trial court made a mistake, *Stallworth v Stallworth*, 275 Mich App 282, 284; 738 NW2d 264 (2007), and thus, we cannot conclude that the trial court clearly erred, *Ewald*, 292 Mich App at 714.

Our conclusion is also consistent with caselaw predating the MCSF enabling legislation.[7] In *Verbeke*, the trial court ordered that the defendant pay the plaintiff $40 a week in child support. *Verbeke*, 352 Mich at 633. The plaintiff then moved to Germany, and the trial court modified the support order by reducing the payments from $40 a week to $10 a week. *Id.* at 633-

---

[7] See *Ghidotti*, 459 Mich at 194-197, and *Burba*, 461 Mich at 642-644, for a historical perspective on legislation authorizing the MCSF.

-11-

634. On appeal, our Supreme Court set aside the modified support order, reasoning that the defendant "did not contend that his financial condition had changed, but called attention to the fact that plaintiff could purchase more per dollar in Europe than she could purchase per dollar in the United States. This fact did not justify the court's order of modification." *Id*. at 635.

Accordingly, because a lower cost of living in the child's locality is not a proper basis for deviating from the child support formula, the trial court's application of the child support formula was not "unjust or inappropriate" under these circumstances, MCL 552.605(2), and therefore, the trial court did not abuse its discretion by establishing the amount of child support in accordance with that recommended by the MCSF.

We affirm. Plaintiff, as the prevailing party, may tax costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan