*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GEORGE JAPPAYA,

        Plaintiff/Counterdefendant-
        Appellee/Crossappellant,

v

F.G.Y., INC., a/k/a FGY INC., JOE KARMO,
NIDHAL KARMO, YOUSIF KALASHO, and
LUMIA KALASHO,

        Defendants/Counterplaintiffs/Third-
        Party Defendants-
        Appellants/Crossappellees,

and

CHASE MANHATTAN MORTGAGE
CORPORATION and BANK OF AMERICA,

        Defendants/Counterplaintiffs-Third-
        Party Plaintiffs,

and

SHAWN JAPPAYA, JAPPAYA LAW, PLC, and
JAMAL ALNAKSHABANDI,

        Third-Party Defendants..

UNPUBLISHED
July 8, 2021

No. 349247
Oakland Circuit Court
LC No. 2016-155024-CB

GEORGE JAPPAYA,

        Plaintiff/Counterdefendant-Appellee,

v

No. 349610
Oakland Circuit Court

-1-

F.G.Y., INC., a/k/a FGY INC, JOE KARMO,          LC No.   2016-155024-CB
NIDHAL KARMO, and YOUSIF KALASHO,

                    Defendants/Counterplaintiffs/Third-
                    Party Plaintiffs-Appellants,

and

CHASE MANHATTAN MORTGAGE
CORPORATION and BANK OF AMERICA,

                    Defendants/Counterplaintiffs/Third-
                    Party Plaintiffs,

and

SHAWN JAPPAYA, JAPPAYA LAW, PLC, and
JAMAL ALNAKSHABANDI,

                    Third-Party Defendants.

Before:  K. F. KELLY, P.J., and SHAPIRO and SWARTZLE, JJ.

PER CURIAM.

In Docket No. 349247, defendants[1] F.G.Y., Inc a/k/a FGY Inc (FGY), Joe Karmo (Joe), Nidhal Karmo, Yousif Kalasho (Yousif), and Lumia Kalasho appeal as of right the trial court opinion and order dismissing defendants' counterclaims following a bench trial, as well as the opinion and orders granting plaintiff George Jappaya's (plaintiff) motion for summary disposition and denying defendants' motion for a new trial. Plaintiff also filed a crossappeal challenging the trial court's reduction of his request for attorney fees and the calculation of statutory interest. Although the trial court rendered dispositional rulings, at the time defendants filed their claim of appeal in Docket No. 349247, a final judgment had not entered. Accordingly, in Docket No. 349610, defendants appeal as of right the trial court judgment awarding plaintiff $1,168,960 against FGY, $313,085.94 plus $28,085.94 in interest against Joe, and $313,085.94 plus $28,085.94 against Yousif as well as $64,796 in attorney fees against FGY, Joe, and Yousif, jointly

---

[1] Although the judgment arises from the trial court's decision regarding the countercomplaint, we will refer to defendants/counterplaintiffs/third-party defendants as "defendants" and plaintiff/counterdefendant as "plaintiff" for ease of reference.  Additionally, although Joe Karmo's wife, Nidhal Karmo, and Yousif Kalasho's wife, Lumia Kalasho, are named as defendants, the term "defendants" simply refers to Joe and Yousif because the wives were only involved to the extent they also pledged collateral for the Comerica notes.

and severally. Finding no errors warranting reversal, we affirm the trial court's judgment, but remand for the ministerial task of correcting the amount of the attorney fee award to comport with the trial court's ruling and to calculate interest from the correct date of filing the complaint.[2]

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of a business dispute between family members. Plaintiff formed the corporate entity FGY with Fouad Karmo (Fouad) and Joe Karmo (Joe). The men were brothers-in-law because they married sisters. However, Yousif Kalasho (Yousif) learned of the opportunity through his wife, another relative, and also joined FGY. Each of the four men invested $200,000 for the purchase of a hotel in Niles, Michigan known as the Niles Inn in 1998. The cost of the hotel was approximately $1,900,000 and the rest of the financing was obtained from Comerica Bank (Comerica). Plaintiff successfully operated other hotels and indicated that he would manage the Niles Inn. Although the hotel was profitable its first year and each shareholder received $10,000, the hotel subsequently did not earn a profit in light of the economic downturn. Plaintiff obtained a second note on the property valued at $100,000. He also requested funds from Yousif to meet obligations, including payroll. Because of the hotel's poor financial circumstances, Comerica requested that the shareholders pledge their homes as collateral with a value up to $285,000. Plaintiff purportedly requested that all shareholders pledge their homes as collateral or a guarantee. It was later learned that plaintiff did not pledge his home as collateral but a business. Plaintiff hired an individual named Jamal Alnakshabandi to operate the hotel. Alnakshabandi later paid $150,000 and became a fifth shareholder. At some point, Alnakshabandi left the hotel and returned to Iraq. Fouad died in 2004.

Two attempts were made to sell the hotel, but the transactions were not completed. Ultimately, FGY defaulted on its obligations to repay the Comerica notes. Plaintiff retained negotiators to try and resolve the default with Comerica at a discount. Eventually, plaintiff and his son, attorney Shawn Jappaya (Shawn), were key players in negotiating a resolution. Plaintiff purchased the nearly $850,000 in notes at a discounted rate of $700,000 by relying on a certificate of deposit (CD) that he had with Comerica. However, because the CD governed other collateral, plaintiff was required to sign the note[3] back to Comerica. The hotel eventually closed, and the shareholders agreed with Comerica that the hotel should be demolished with the shareholders paying for the demolition.

During the operation of the hotel, the familial relationships began to deteriorate. Plaintiff purportedly became upset when Yousif denied his request for money to make payroll. However, Yousif claimed that he never denied any request by plaintiff for hotel funding. Furthermore, Yousif previously allowed plaintiff's son, Shawn, to serve as legal counsel for FGY. Eventually,

---

[2] On July 15, 2019, the appeals were consolidated "to advance the efficient administration of the appellate process." *Jappaya v FGY Inc*, unpublished order of the Court of Appeals entered July 15, 2019 (Docket Nos. 349247; 349610).

[3] Although there was the initial note of $1,100,000 and a second $100,000 note, the parties sometimes refer to "notes" or "note," but it is apparent that they are referring to the cumulative outstanding financial liability.

Yousif began to receive legal advice from other sources. Ultimately, in 2016, plaintiff filed suit against the other shareholders and guarantors for their breach of payment with regard to the notes, mortgage, and personal guarantees. Defendants filed a countercomplaint essentially alleging that plaintiff mismanaged the assets of FGY, breached fiduciary duties, misappropriated corporate assets, misrepresented or fraudulently purchased the Comerica notes in plaintiff's name only to the detriment of the other shareholders, and converted FGY's assets among other claims. The trial court granted summary disposition in favor of plaintiff pertaining to his complaint for defendants' failure to pay in accordance with the Comerica agreements. However, the trial court did not enter a judgment at that time because any success on the countercomplaint could potentially reduce defendants' liability for any judgment. Following a bench trial, the court concluded that defendants did not prove their causes of action. From this decision, defendants filed their claim of appeal challenging the trial court's assessment of the credibility of the witnesses in reaching its verdict, the grant of summary disposition to plaintiff, the failure to allow amendment of the countercomplaint and to add the affirmative defense of election of remedies, and the calculation of the judgment amount. Plaintiff filed a crossappeal to take issue with the reduction of his request for attorney fees and the calculation of interest.

## II. BENCH VERDICT FACTUAL FINDINGS

Defendants first allege that the trial court erred by concluding that all parties did not provide credible testimony because one of the two versions of events had to be true and Yousif's and Joe's testimony merely reflected factual inconsistencies and their limited knowledge and roles in the family business. We disagree.

Following a bench trial, an appellate court reviews for clear error the trial court's factual findings and reviews de novo its conclusions of law. *Menhennick Family Trust v Menhennick*, 326 Mich App 504, 509; 927 NW2d 741 (2018). A finding is clearly erroneous if there is a lack of evidentiary support for the finding or, if after a review of the entire record, this Court is left with a definite and firm conviction that the trial court made a mistake. *Id.*

It is the trier of fact's function to resolve issues regarding credibility and intent. *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 174; 530 NW2d 772 (1995). The appellate court will not set aside the findings of facts of the trial court sitting without a jury unless the findings are clearly erroneous; that is, the reviewing court must be left with a definite and firm conviction that a mistake was committed. *Trail Clinic, PC v Bloch*, 114 Mich App 700, 710; 319 NW2d 638 (1982). In determining whether facts are clearly erroneous, this Court must give due regard to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. *Id.* Thus, the reviewing court does not weigh the evidence or the credibility of the witness. *In re Kabanuk*, 295 Mich App 252, 256; 813 NW2d 348 (2012). This deference is given because the trial court is in a better position to examine the facts. *Hill v City of Warren*, 276 Mich App 299, 308; 740 NW2d 706 (2007). Indeed, when witnesses testify to diametrically opposed assertions of fact, the test of credibility lies where the system has reposed it, with the trier of fact. *Kalamazoo Co Rd Comm'rs v Bera*, 373 Mich 310, 314; 129 NW2d 427 (1964). Furthermore, the trier of fact is entitled to believe all, part, or none of the testimony from a witness. See *Brown v Pointer*, 41 Mich App 539, 552; 200 NW2d 756 (1972), rev'd on other grounds 390 Mich 346 (1973).

Defendants submit that the trial court "shirked" its responsibility to assess the credibility of the witnesses and should have found that defendants Yousif and Joe were credible under the circumstances. Irrespective of the trial court's findings regarding credibility, defendants were still required to prove that plaintiff engaged in fraud and breached fiduciary duties to the other shareholders. The trial court found that defendants could not meet their proofs. Indeed, the trial testimony established that even if plaintiff had more experience or expertise in hotel management, all of the shareholders were experienced businessmen. In particular, Yousif acknowledged that he was a civil engineer in Iraq. Although he initially worked in a store when he immigrated to the United States, he purchased his own store, built a strip mall, and leased the premises to tenants. Yousif engaged in a multi-million dollar transaction with Walgreens for a lease that guaranteed him income for 25 years.

Yet, when it came to the hotel transaction, Yousif testified that he trusted plaintiff, and plaintiff told him not to worry. Yousif claimed that he worked 12-hour days and that he did not read his emails. When Yousif was advised that documentation regarding plaintiff's sole purchase of the notes for $700,000 from Comerica for the hotel was sent to Yousif's e-mail, Yousif asserted that Shawn did not contact him and direct him to read the e-mail. Therefore, Yousif did not know of plaintiff's purchase.

Under these circumstances, the trial court did not "shirk" its responsibility to find a witness credible or to delineate some part of a witness's testimony to be credible. Rather, Yousif asserted that he trusted plaintiff and relied on plaintiff's fraudulent statements to support the contention that plaintiff committed fraud and breached duties owed to the other shareholders. However, the extensive testimony indicated that Yousif was a smart and successful businessman who questioned the "waiver" and "conflict of interest" language in the documents submitted to him by Shawn such that Yousif contacted two different lawyers to advise him. The trial court was entitled to conclude that Yousif's testimony was not credible, and therefore, he could not satisfy the elements to support defendants' countercomplaint. The trial court's holding that all of the shareholder witnesses had credibility issues and gave incredible testimony does not alter defendants' inability to meet their proofs. This claim of error does not entitle defendants to appellate relief.

III. SUMMARY DISPOSITION

Defendants assert that the trial court erred in granting plaintiff's motion for summary disposition of his complaint seeking payment on the loan documents because defendants presented evidence to support a waiver defense and raised various allegations of misconduct by plaintiff. We disagree.

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Bennett v Russell*, 322 Mich App 638, 642; 913 NW2d 364 (2018). Summary disposition is appropriate pursuant to MCR 2.116(C)(10) where there is "no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition challenged under MCR 2.116(C)(10), the court considers the affidavits, pleadings, depositions, admissions, and other admissible documentary evidence then filed in the action or submitted by the parties. MCR 2.116(G)(4), (G)(5); *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 68; 919 NW2d 439 (2018).

Plaintiff filed his motion for summary disposition alleging that his complaint presented a simple collection action. In support of his motion, he submitted documentation to demonstrate the Comerica notes, his purchase of the notes, an affidavit claiming nonpayment, and Joe's deposition testimony reflecting his lack of financial resources.

In opposition, defendants alleged that plaintiff waived his right to collect on the notes by repeatedly advising Yousif and Joe that they owed nothing on the notes and that plaintiff would not pursue payment on the guarantees. It was alleged that this contrary evidence of waiver demonstrated that the issue could not be decided as a matter of law. Defendants also submitted that plaintiff had to elect a remedy and could not pursue both foreclosure of property and a money judgment. Finally, defendants argued that their countercomplaint alleging breach of fiduciary duty and fraud demonstrated that summary disposition was inappropriate.

The trial court declined to consider the claims of breach of fiduciary duty and fraud in the context of plaintiff's claim for breach of the notes, mortgage, and guaranties, but noted that success on the countercomplaint may reduce defendants' liabilities to plaintiff. After delineating the law on waiver and the requirement that a waiver must be established by clear and convincing evidence, the trial court concluded that defendants failed to meet this burden. The trial court held:

> In support of their argument that Plaintiff waived his right to collect on the notes, Defendants make allegations without citation to (or unsupported by) evidence. For example, the only specific reference to evidence supporting an unequivocal, express declaration of waiver is citation to the deposition testimony of Vladimir Slapak, a senior Comerica vice president. But Defendants' characterization of Slapak's testimony is simply wrong. Slapak said nothing of Plaintiff's express, intentional promise to waive his right to collect on the Notes and Guarantees.
>
> Because Defendants fail to present any evidence of waiver, the Court rejects this argument.
>
> Defendants next argue that Plaintiff cannot pursue both a foreclosure and a money judgment based on an election of remedies defense. But such a defense is an affirmative defense that must be pled in a party's initial pleading or is forever waived. *Willard v Shekell*, 236 Mich 197, 205; 210 NW 260, 262 (1926) (reading "The defense of election of remedies is an affirmative defense"); citing *Bryant v Kenyon*, 123 Mich 151, 154; 81 NW 1093 (1900). Because Defendants did not plead the election of remedy as an affirmative defense, they waived their right to assert the same. *Campbell v St John Hosp*, 434 Mich 608, 616' 455 MW2d 695 (1990); MCR 2.111(F).
>
> For all of the foregoing reasons and viewing all evidence in the light most favorable to Defendants, the Court finds that there [are] no material questions of fact in dispute and Plaintiff is entitled to judgment as a matter of law. The Court will, therefore, GRANT Plaintiff's motion for summary [disposition] on his own Complaint, and enter judgment against FGY in the amount of $1,168,960 and against Joe Karmo and Yousif Kalasho in the amount of $285,000.

Although the trial court granted plaintiff's motion for summary disposition of his complaint, it denied plaintiff's motion for summary disposition of defendants' countercomplaint for making "factual assertions and provid[ing] only cursory and incomplete citation to law." However, the trial court stayed enforcement of plaintiff's money judgment until the countercomplaint was resolved to determine if the claims reduced plaintiff's recovery.

In *Patel v Patel*, 324 Mich App 631, 634; 922 NW2d 647 (2018), this Court addressed the principles governing waiver:

> A waiver consists of the intentional relinquishment or abandonment of a known right. "Waiver is a mixed question of law and fact. The definition of a waiver is a question of law, but whether the facts of a particular case constitute a waiver is a question of fact." "The party asserting the waiver bears the burden of proof." Magic words are unnecessary to effectuate a valid waiver, but a waiver must be explicit, voluntary, and made in good faith. In order to ascertain whether a waiver exists, a court must determine if a reasonable person would have understood that he or she was waiving the interest in question. Thus, a valid waiver may be shown by "express declarations or by declarations that manifest the parties' intent and purpose," or be an implied waiver, "evidenced by a part's decisive, unequivocal conduct reasonably inferring the intent to waive." [Citations omitted.]

Clear and convincing evidence is required to show a waiver. *Zeigler v Valley Coal Co*, 150 Mich 82, 85; 113 NW 775 (1907). When there is a written restriction on amendment of an agreement, there must be clear and convincing evidence to overcome the substantive contractual provisions. See *Quality Prods & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 374; 666 NW2d 251 (2003).

We conclude that the trial court did not err in granting summary disposition to plaintiff despite defendants' contention that plaintiff waived execution of the notes, mortgage, and guarantees that he acquired. The evidence of a waiver must be clear and convincing. *Ziegler*, 150 Mich at 85. Defendants do not submit any evidence of a writing that plaintiff would not seek to collect on defendants' liabilities that he purchased from Comerica. Rather, defendants rely on a statement from bank manager Vladimir Slapak in his deposition that plaintiff made the purchase of the notes from Comerica in order to make things "right" with his family. However, the immediate concern at the time of the purchase of the notes was the default by the shareholders. Indeed, in a letter dated March 14, 2011, Comerica representative Chris Hoffman wrote plaintiff and advised that the failure to make payments on February 1, and March 1, 2011, rendered the loan documents in default, and this default "represents a default under any other Bank debt that Borrower/Guarantors may have with Bank." Thus, it was possible for Comerica, according to this writing, to execute on other obligations that the guarantors held with Comerica, including Yousif's Walgreens loan.[4] The statement that plaintiff wanted to make things "right" does not evidence a necessarily permanent intent to waive collection on the notes that plaintiff purchased. Rather, it could have reflected that plaintiff acted to prevent the immediate possibility that all other Comerica

---

[4] We note that Yousif acknowledged the expression of the possibility of accelerating all other obligations held with Comerica, but claimed that his other bank interests were never in jeopardy.

transactions held by the shareholders would be executed upon. Similarly, although defendants cite to plaintiff's purported statement that he did not "want a penny" from Yousif, it is also possible that plaintiff did not want any contribution to the $700,000 purchase price for the notes because he would seek (and eventually did seek through this litigation) to collect at a later time. Clear and convincing evidence of waiver was lacking. There was no writing obtained to demonstrate that plaintiff had an intent to permanently forbear on defendants' obligations. Additionally, the statements purportedly made by plaintiff also do not necessarily demonstrate an intent to absolve defendants of their financial commitments. Plaintiff may have merely reflected his desire not to seek contribution toward the note purchase because he did not want to confuse payment toward the purchase of the Comerica notes with the obligations delineated in the documentation underlying his purchase.

Defendants also contend that the trial court erred in granting summary disposition before their production of evidence to support their claims for fraud and breach of fiduciary duty. They note that the trial court expressed, during trial, that it may have erred in granting summary disposition to plaintiff. Defendants seemingly allege that summary disposition was premature or improper before plaintiff's alleged corporate improprieties were considered. However, the trial court was not required to hold summary disposition of the complaint in abeyance until the countercomplaint was resolved. Regardless of any conclusion reached by the trial court regarding witness credibility, clear and convincing evidence of fraud was not introduced by defendants. "[F]raud will not be presumed, but must be proved[,]" and the person raising fraud has the duty to establish it by convincing evidence. *Groth v Singerman*, 328 Mich 615, 619; 44 NW2d 155 (1950).) Indeed, the hotel as a family business transaction coupled with the lax record keeping indicated that the shareholders did not maintain a log of loans and expectations regarding repayment and priority of repayment. Instead, "loans" to FGY were attempted to be shown by cancelled checks. Indeed, the trial court was particularly concerned about the presentation of FGY's tax returns and reported $1,000,000 in corporate shareholder loans without underlying documentation to support that amount. Under the circumstances, the trial court did not err in delaying a decision on plaintiff's motion for summary disposition to allow defendants to present evidence to support the theories of fraud and breach of fiduciary duty. Moreover, in light of defendants' failure to prove these theories at trial, the challenge does not entitle them to appellate relief.

## IV. AMENDMENT OF AFFIRMATIVE DEFENSES

Defendants contend that the trial court erred by failing to permit amendment of its affirmative defenses to include election of remedies. We disagree.

The decision to grant leave to amend affirmative defenses rests within the trial court's discretion. *Cole v Ladbroke Racing Mich, Inc*, 241 Mich App 1, 9-10; 614 NW2d 169 (2000). However, defendants raised this issue for the first time in their motion for reconsideration of the trial court opinion and order granting summary disposition. Where an issue is first presented in a motion for reconsideration, it is not properly preserved. *Arabo v Mich Gaming Control Bd*, 310 Mich App 370, 404-405; 872 NW2d 223 (2015). Unpreserved issues are reviewed for plain error affecting substantial rights. *Saginaw Educ Ass'n v Eady-Miskiewicz*, 319 Mich App 422; 902 NW2d 1 (2017). To avoid forfeiture under the plain error rule, an error must occur, it must be

plain, and the plain error must affect substantial rights. *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000) (citation omitted).

In *Jim-Bob Inc v Mehling*, 178 Mich App 71, 91; 443 NW2d 451 (1989), this Court explained the doctrine of election of remedies:

> The doctrine of election of remedies is merely a procedural rule which precludes a plaintiff to whom there are available two inconsistent remedies from pursuing both. Its purpose is to prevent double recovery for a single injury, not to prevent recourse to alternative remedies. The essential conditions or elements of election of remedies are: (1) the existence of two or more remedies; (2) an inconsistency between the remedies; and (3) a choice of one of them. [Citations and quotation marks omitted].

In *Willard v Shekell*, 236 Mich 197, 205; 210 NW 260 (1926), election of remedies was identified as an affirmative defense:

> The defense of election of remedies is an affirmative defense and the burden is upon the defendants to establish it. We are not persuaded that this record establishes that the plaintiff has asserted inconsistent claims or that he has instituted inconsistent proceedings; on the contrary we conclude that they were consistent.

In the present case, defendants contend that the trial court abused its discretion in failing to amend the affirmative defenses to allege election of remedies. However, as the *Willard* Court concluded, in the context of this countercomplaint, defendants had the burden of establishing that inconsistent claims were raised. In the trial court and on appeal, defendants did not respond to the contention that there is a distinction between seeking to collect on the notes purchased from Comerica and the personal guarantees. Because defendants simply claim that leave should have been freely granted and do not make any threshold showing that election of remedies is applicable, defendants failed to establish plain error affecting substantial rights.

## V. AMENDMENT OF COUNTERCOMPLAINT TO RAISE SHAREHOLDER OPPRESSION

Next, defendants submit that the trial court abused its discretion by failing to permit the amendment of the countercomplaint to raise the issue of shareholder oppression. We disagree.

"A trial court's decision on a motion to amend a complaint is reviewed for an abuse of discretion." *Long v Liquor Control Comm'n*, 322 Mich App 60, 67; 910 NW2d 674 (2017) (citation omitted). In Michigan, the primary function of a pleading is to provide notice of the nature of the claim or defense such that the opposing party may sufficiently prepare a responsive position. *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 317; 503 NW2d 758 (1993). A trial court should freely grant leave to amend a complaint when justice so requires. See MCR 2.118(A)(2); *Sanders v Perfecting Church*, 303 Mich App 1, 9; 840 NW2d 401 (2013). A motion to amend should generally be granted unless one of the following reasons is present:

> [1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of the amendment, [and 5]

futility[.]  [*Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997) (quotation and citation omitted).]

If the motion to amend is denied, the trial court should state its rationale on the record.  *Id*. at 659.  A delay alone is generally insufficient to deny a motion to amend.  However, if the trial court concludes that the delay was the result of bad faith or if the opposing party suffered actual prejudice as a result, it may deny the motion to amend.  *Id*.  Prejudice in this context occurs if the amendment would prevent the opposing party from receiving a fair trial by being unable to properly contest the issues raised in the amendment.  *Id*.

At the hearing on the motion to amend, the trial court denied the motion, citing the length of time the case was pending (two years), the timing of the motion (in the middle of trial), and the prejudice to plaintiff in light of the fact that the case had been tried for three days.  In light of the trial court's ruling and the record, we cannot conclude that the trial court abused its discretion.  When the trial court addressed plaintiff's motions for summary disposition on December 15, 2017, it ruled in favor of plaintiff regarding his complaint, but declined to enter a judgment or allow collection on any monetary award.  The trial court cited a possible reduction of liability by defendants in light of their pending countercomplaint.  At that time, defendants should have known of the pending award against them and to contemplate whether it was necessary to add the Karmos to the countercomplaint to maximize any reduction in plaintiff's judgment and to add a minority shareholder oppression claim.  Yet, trial occurred on January 8, 11, and 12, 2018, without mention of the need to amend the pleadings.  It was not until February 21, 2018, that defendants sought the opportunity to amend.  Under the circumstances, the trial court did not abuse its discretion by denying the defense motion to amend the countercomplaint because of the undue delay in making the request and the prejudice to plaintiff.

## VI. JUDGMENT CALCULATION

Lastly, defendants allege that the trial court erred in its calculation of damages because plaintiff purchased the notes at a discounted rate of $700,000, and therefore, the liability of Yousif and Joe should have been limited to $140,000 or 20% of $700,000.  Because defendants failed to cite authority to demonstrate that the trial court clearly erred in its calculation of the damage award, we disagree.

Following a bench trial, a trial court's determination of damages is reviewed for clear error.  *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 513; 667 NW2d 379 (2003).   In *Tel-Ex Plaza, Inc v Hardees Restaurants, Inc*, 76 Mich App 131, 134-135; 255 NW2d 794 (1977), this Court addressed damages for breach of contract:

> The goal in awarding damages for breach of contract is to give the innocent party the benefit of his bargain - - to place him in a position equivalent to that which he would have attained had the contract been performed.  The injured party, however, must make every reasonable effort to minimize the loss suffered, and the damages must be reduced by any benefits accruing to the plaintiff as a consequence of the breach.

In the present case, defendants submit that because plaintiff paid $700,000 for the notes from Comerica and because defendants each held 20% shares in FGY, defendants were only responsible for 20% of $700,000 or $140,000. Therefore, the trial court erred by awarding the amount of the guarantees. However, a statement of position without citation to authority is insufficient to raise an issue before this Court. *Sherman v Sea-Ray Boats, Inc*, 251 Mich App 41, 57; 649 NW2d 783 (2002). "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). "The appellant himself must first adequately prime the pump: only then does the appellate well begin to flow. Failure to brief a question on appeal is tantamount to abandoning it." *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) (citations omitted).

In the present case, the parties executed documents pertaining to FGY, promissory notes, mortgages, and guarantees. Additionally, plaintiff purchased the notes involving FGY and pledged the notes back to Comerica. Despite the documentation involved, defendants failed to cite to any contractual terms addressing the event of a breach and the damages triggered by the breach. Instead of citing the contract documents and presenting applicable legal authority regarding contract damages, defendants simply argue, without more, that their damages are limited to 20% of $700,000. Defendants do not cite to any contractual provision demonstrating that liability for a contractual breach is limited to the percentage of corporate shares held. In light of this deficiency, there can be no determination that the trial court's damage award was clearly erroneous.

## VII. ATTORNEY FEE REDUCTION

In his crossappeal, plaintiff contends that the trial court improperly reduced his attorney fee request of $67,796 by $3,000 to reflect the fee charged by the initial attorney that filed the complaint in Berrien County. We disagree. However, when the judgment was amended to include the statutory foreclosure language, it included this disputed $3,000 in the calculated judgment. Accordingly, we remand for the ministerial task of correcting the attorney fee award to $64,796.

This Court reviews a trial court's decision whether to award attorney fees and the decision regarding the reasonableness of the attorney fees for an abuse of discretion. *Teran v Rittley*, 313 Mich App 197, 208; 882 NW2d 181 (2015). A trial court abuses its discretion when it selects an outcome outside the range of reasonable and principled outcomes. *Id*. The trial court's factual findings underlying an attorney fee decision are reviewed for clear error. *Loutts v Loutts*, 298 Mich App 21, 24; 826 NW2d 152 (2012). A finding is clearly erroneous, if, upon a review of the entire record, the reviewing court is left with a definite and firm conviction that the trial court made a mistake. *Lueck v Lueck*, 328 Mich App 399, 404; 937 NW2d 729 (2019). Questions of law are reviewed de novo. *Loutts*, 298 Mich App at 24.

At the hearing to address attorney fees, defendants did not object to the hours expended or the hours charged. However, defense counsel objected to the $3,000 in attorney fees requested for the filing of the complaint by plaintiff's first counsel in Berrien County. Defense counsel represented that he learned the filing in Berrien County was deliberate to cause additional fees. Indeed, all parties were residents of Oakland County, and the initial attorney's office was located

in Farmington Hills. Because Berrien County played no role in the litigation, a change of venue was granted to Oakland County.

Indeed, although the hotel was located in Berrien County, there did not appear to be any other relationship between the parties and that county. Rather, the parties, their transactions, and their communications regarding the hotel seemingly all occurred in Oakland County. Moreover, defense counsel represented that he was given information that the litigation was filed in Berrien County to deliberately increase expenses. Plaintiff fails to address why the trial court could not accept that representation from an officer of the court. Moreover, it was simply logical that Berrien County was not a convenient location to litigate the action. Under the circumstances, we cannot conclude that the trial court's reduction of $3,000 constituted an abuse of discretion.

For purposes of completeness, we note that the trial court's judgment dated June 5, 2019, and received for filing on June 12, 2019 expressly stated that "Attorney fees in the amount of $**64,796** are awarded against Defendants FGY, Inc., Joe Karmo and Yousif Kalasho, jointly and severally." This reflected the reduction of $3,000. However, on November 6, 2019, defendants filed a motion to remand to the trial court in this Court, contending that in order to proceed with the foreclosure sale, the judgment needed to be amended to include statutory language from MCL 600.3150. On January 9, 2020, this Court granted the motion to remand and retained jurisdiction. *Jappaya v FGY Inc*, unpublished order of the Court of Appeals entered January 9, 2020 (Docket Nos. 349347; 349610).

At the hearing held in the trial court, plaintiff's counsel represented that the *only difference* between the prior order and the submitted order was the addition of the statutory language. However, a review of the amended judgment reveals that it provides, "Attorney fees in the amount of $**67,796** are also awarded against Defendants FGY, Inc., Joe Karmo and Yousif Kalasho, jointly and severally." Thus, the trial court must amend the judgment to reflect its reduction of the attorney fees by $3,000.

## VIII. CALCULATION OF INTEREST

Finally, plaintiff submits that the trial court abused its discretion by failing to award pre-complaint interest and in its calculation of the statutory interest. Because the parties agree that the trial court utilized the wrong date of filing for the complaint, we remand for recalculation of interest using the correct date of filing. However, plaintiff failed to demonstrate entitlement to any other relief.

To the extent an award of interest is premised on a statutory provision, statutory interpretation is reviewed de novo. *Berry v Garrett*, 316 Mich App 37, 41; 890 NW2d 882 (2016).

## A. STATUTORY INTEREST

Plaintiff contends that the trial court erred in using the wrong interest calculation because MCL 600.6013(7) applies. On the contrary, defendants argue that MCL 600.6013(8) applies.

As noted, a party may not merely announce a position and leave it to this Court to analyze a claim. That is, a statement of position without citation to authority is insufficient to raise an issue before this Court. *Sherman*, 251 Mich App at 57. "An appellant may not merely announce his

position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641. "The appellant himself must first adequately prime the pump: only then does the appellate well begin to flow. Failure to brief a question on appeal is tantamount to abandoning it." *Mitcham*, 355 Mich at 203.

Although plaintiff cited MCL 600.6013, the statute governing interest on a money judgment, and contends that MCL 600.6013(7) applies, he fails to address why that subsection applies instead of the general provision contained in MCL 600.6013(8) or analyze any interpretative legal authority. More importantly, this Court serves as an error correcting Court, *Burns v City of Detroit*, 253 Mich App 608, 615; 660 NW2d 85 (2002), and there is no indication that plaintiff adequately briefed this issue in the trial court; yet, he now complains on appeal that the trial court erred. Accordingly, because plaintiff failed to adequately address this issue, he abandoned this issue by declaring that MCL 600.6013(7) applied without conducting any substantive analysis.

## B. PRE-JUDGMENT INTEREST

Finally, plaintiff asserts that Comerica declared a default in 2010 and the loan forbearance agreement that was reached provided for contractual interest. Therefore, plaintiff claims entitlement to pre-complaint interest calculated from the date of the 2010 default to the filing date of the complaint. We disagree.

Although Comerica deemed that the parties defaulted on their loan obligations, Comerica nonetheless placed the loans in "workout" status. That is, it tried to help the parties meet their monetary obligations by considering acceptance of a lesser payment amount or allowing interest only payments. Comerica notified the parties that the default with regard to the hotel transaction jeopardized the parties other loan agreements with Comerica for other business ventures. Yet, even though Comerica filed suit against the shareholders, it continued to negotiate with the parties and ultimately settled its litigation by discounting the outstanding loan amount from $850,000 to $700,000. The $700,000 purchase of the note allowed a global settlement that precluded repercussions to the shareholders' other loans. Thus, despite the declaration of a default by Comerica, it did not proceed to exercise all of its rights precipitated by a default and entered into a settlement. Under these circumstances, plaintiff is not entitled to pre-complaint interest. Moreover, after purchase of the note from Comerica, plaintiff did not immediately call a shareholders meeting and advise of his purchase of the outstanding debt and his intent to collect from the remaining shareholders. Therefore, plaintiff's delay in pursuing this litigation caused any loss of use value of the money. An award of pre-complaint interest is inappropriate under the circumstances.

We affirm the trial court's verdict and determination of attorney fees. We remand for the ministerial task of calculating interest premised on the correct filing date of the complaint and to amend the judgment to reduce the attorney fee award by $3,000. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Brock A. Swartzle