*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TONI LYN MARTINEZ, f/k/a TONI LYN CARR,

        Plaintiff-Appellee,

v

DEREK CARR,

        Defendant-Appellant.

UNPUBLISHED
August 19, 2021

No. 351858
Clinton Circuit Court
LC No. 2016-026942-DO

TONY LYN MARTINEZ, f/k/a TONI LYN CARR,

        Plaintiff-Appellee,

v

DEREK CARR,

        Defendant-Appellant.

No. 352729
Clinton Circuit Court
LC No. 2016-026942-DO

Before: STEPHENS, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

These appeals are a culmination of contentious, constant, continuous and acrimonious post-judgment litigation; or, as the trial court stated it is "a case that never lacked for a new dispute."

In Docket No. 351858, defendant appeals as of right the trial court's opinion and order denying his request for attorney and expert witness fees purportedly incurred to obtain enforcement of the provisions in the consent judgment of divorce. In Docket No. 352729, defendant appeals by delayed leave granted the trial court's opinion and order declining to reimburse the costs and

-1-

penalties incurred as a result of plaintiff's failure to comply with the joint tax return provision of the divorce judgment.[1] Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff and defendant were married in 2003, and had no children. In October 2016, plaintiff filed her complaint for divorce. Thereafter, multiple motions were filed before the trial court to address issues including exclusive occupation of the marital home, the release of the parties' assets to pay attorney fees, the release of defendant's medical records to support his claimed need for spousal support, and the exclusion of the medical records at trial. In February 2017, the parties filed a stipulation and order to set aside a mutual temporary restraining order in light of the resolution of the divorce through a confidential settlement agreement (CSA). The terms of the CSA were to be incorporated into the consent judgment of divorce.

In May 2017, after the CSA was executed, but prior to the entry of a divorce judgment, defendant filed a motion to enforce the CSA.[2] Specifically, defendant claimed that the parties' firearms were in the hands of a dealer, and plaintiff failed to comply with the CSA provision regarding delivery of the firearms to him. Also in this agreement, plaintiff purportedly was responsible for the costs associated with the enforcement of the firearms provision. Further, defendant alleged that plaintiff breached the CSA by disclosing its terms to the dealer holding the firearms, and therefore, plaintiff was responsible for $5,000 in liquidated damages for this breach. Finally, although plaintiff obtained exclusive possession of the marital home in October 2016, defendant requested that she repay him for the period of occupancy between December 2016 and March 2017, for outstanding expenses of $7,306.68 that she failed to pay. Accordingly, defendant sought attorney fees and costs for enforcement of the CSA.

In May 2017, plaintiff filed an answer to this motion. She contended that, in accordance with the CSA, the parties had completed a consent judgment of divorce and were waiting for defense counsel to circulate it for signatures. Furthermore, because the CSA and judgment of divorce resolved outstanding issues raised by defendant, plaintiff contended that defendant's motion was frivolous and was merely designed to delay the proceedings. Plaintiff also claimed that she recently began a "dating relationship" with the firearms dealer, Dr. Michael Hoppe, and defendant's animosity toward the couple caused him to "frustrate" the proceedings. She denied the allegation that she failed to comply with the firearms transfer requirement of the CSA. Rather, plaintiff asserted that Dr. Hoppe was advised by his counsel to transfer the guns only after entry of the divorce judgment and to transfer the guns directly to defendant because federal criminal liability could occur if he presented the guns to plaintiff for delivery to defendant. Moreover, plaintiff claimed that defendant and his counsel could have simply picked up the guns directly

---

[1] In addition to granting leave, the appeals were consolidated. *Martinez v Carr*, unpublished order of the Court of Appeals entered March 23, 2020 (Docket No. 352729).

[2] This motion also alleged that plaintiff and her counsel committed discovery violations regarding defendant's medical and business records. These purported violations are not challenged on appeal.

from Dr. Hoppe, raised issues that were believed resolved by the proposed judgment, and attorney fees should be awarded to her for having to respond to the frivolous motion.

Addressing the alleged disclosure of confidential information in the CSA, plaintiff claimed that it was defense counsel that should be sanctioned for his preparation of an affidavit for Dr. Hoppe's signature that disclosed firearm information. Addressing home expenses, plaintiff contended that defendant's company, "The HelpDesk LLC," paid him $7,500 a year to cover home business expenses such as electric, heating and cooling, and waste management. Therefore, defendant should have pursued entry of the judgment and filed a motion if there was noncompliance with its provisions. Plaintiff requested attorney fees, costs, and sanctions for having to respond to defendant's frivolous motion.

On May 26, 2017, the trial court heard oral argument on the breach of the CSA motion. Although a judgment of divorce was presented to the court, the trial court agreed to delay signing the judgment until June 2, 2017, to allow defendant to have a medical procedure covered by plaintiff's insurance. Defense counsel argued that there were outstanding issues related to delivery of defendant's guns, nearly $7,900 in expenses for plaintiff's sole occupancy of the marital home between October 2016 and March 2017, plaintiff's disclosure of confidential information for which $5,000 was the penalty, and plaintiff's obligation to present paperwork to defendant to acquire COBRA insurance coverage. Because defendant's medical costs were over $100,000 a month, counsel also sought a penalty to hold plaintiff responsible for failing to provide the insurance information, although defendant was responsible for the premium costs. The trial court declined defendant's invitation to "write" an insurance document penalty provision into the judgment, but noted the parties could seek a penalty for noncompliance with any agreed to provision. The trial court scheduled an evidentiary hearing for June 2017, to hear witnesses and present evidence addressing the issues raised.

However, counsel for Dr. Hoppe, Jennipher Martinez (Martinez),[3] was present and testified that *defense* counsel discussed the terms of the CSA between the parties in a phone conversation addressing how to transfer the guns. Additionally, Martinez indicated that she read defendant's motion and the affidavit that he prepared for Dr. Hoppe to sign. This affidavit disclosed that Dr. Hoppe was a firearms dealer and how many guns were stored. Upon questioning by the court, Martinez testified that she appeared in court to ensure that Dr. Hoppe, as a federally licensed firearms dealer as well as an acupuncturist, did not violate any federal laws. Dr. Hoppe was willing to deliver the guns directly to defendant. Martinez brought a spreadsheet delineating each gun and requested a designation regarding the party who should receive each gun. Defense counsel noted that 10 guns were at issue and would be owned by a trust, but the owner would not be named on the record at that time. The hearing concluded. On June 2, 2017, the trial court signed the judgment of divorce.

In July 2017, defendant filed an amended motion to enforce the parties' CSA. The defense asserted that plaintiff was obligated to ensure the delivery of firearms to defendant within 15 days after Dr. Hoppe received the firearms and all necessary federal approval. Despite Dr. Hoppe informing the parties on May 19, 2017, that all pending firearm approval was secured, a date and

---

[3] She was not related to plaintiff.

time for delivery of the firearms was never given. At the hearing on June 20, 2017, it was asserted that the transfer of the firearms would occur that week, but it was later represented that Dr. Hoppe was unavailable to make the transfer. Despite repeated attempts to schedule the delivery, neither Dr. Hoppe nor plaintiff communicated a potential date since June 29, 2017. After the defense contacted plaintiff's counsel, Dr. Hoppe provided tentative dates in July and August. Because plaintiff failed to ensure the delivery within 15 days of May 19, 2017, she was responsible to indemnify defendant for costs incurred in light of the divorce judgment's enforcement provisions. Therefore, defendant requested that Dr. Hoppe deliver the guns in the courthouse parking lot one hour before the scheduled hearing date on the motion. Additionally, it was claimed that plaintiff failed to comply with the COBRA insurance coverage provision and the qualified domestic-relations order (QDRO) requirements. Defendant requested compliance with the judgment provisions or reimbursement for the purchase price of the guns and costs and attorney fees.

On July 18, 2017, the court heard oral argument regarding the motion to enforce the CSA. The parties resolved the COBRA benefit issue as well as the QDRO issue and submitted it to the court for signature and entry. The firearms were to be delivered that evening. However, the parties needed to resolve the issue of expenses for the marital home between December 2016 and February 2017.[4] Although plaintiff was granted occupancy of the marital home, defendant ran his business from that home, and his computer servers were located there. An agreement was reached to allow defendant to work at the home from 10 a.m. to 8 p.m., but there were allegations that plaintiff changed the locks. While defendant took money from his business for its operation expenses, plaintiff's counsel represented there was no stipulation regarding whether that amount could be subtracted from defendant's obligations, and the divorce judgment did not address this issue. However, defense counsel claimed that plaintiff had exclusive possession and submitted a portion of the CSA to the court to support his contention that the expenses should be paid by her. For purposes of the hearing that day, the defense withdrew the challenge to a breach of the CSA. Defendant represented he would need plaintiff's continuing cooperation regarding insurance and the QDRO, and he was entitled to attorney fees for the failure to ensure the timely transfer of the firearms. In reply, plaintiff's counsel asserted that defendant paid rent through his business, and plaintiff's expenses should be reduced by the amount each month that defendant paid himself for the business expenses. The trial court ordered plaintiff to pay $7,053 or three months of expenses at a rate of $2351 as found in the CSA because the CSA made her responsible for the home expenses, and there was no setoff for defendant's business expenses. The trial court acknowledged that defendant requested attorney fees for enforcement of the CSA and divorce judgment, but had not submitted an itemization. Therefore, the trial court would "leave that issue open."

In November 2017, defendant filed a motion for attorney fees and costs for enforcement of the consent judgment of divorce. Specifically, defense counsel noted that the trial court ordered plaintiff to pay $7,053 in monthly expenses for the sole occupancy of the marital home through February 2017. Additionally, plaintiff represented that she would ensure that the firearms were transferred to defendant in a timely manner, but defendant did not secure the firearms for 31 days after receiving notice that the firearms were federally approved for transfer. Thus, defendant was

---

[4] Although defendant initially requested expenses through March 2017, the expense request was now limited to the period between October 2016 and February 2017.

forced to file motions to obtain plaintiff's compliance with the CSA and divorce judgment. Furthermore, defendant obtained disability benefits because of medical conditions and needed his explanation of benefits (EOB) forms from 2016 to obtain the diagnosis and procedure codes to determine the level of insurance coverage that he needed. Despite the request of EOBs from 2016, plaintiff only provided a six-month period from the year 2017. Although defendant attempted to obtain this information directly from the insurer, his request was denied. It was claimed that plaintiff denied the defense request for assistance because she did not want her address disclosed, yet she could have provided the information with redactions. Time was of the essence because defendant needed to select coverage by December 15, 2017, for 2018. Additionally, the parties were to file joint 2016 tax returns. Defendant assumed responsibility for the preparation and submitted the returns to plaintiff for signature. Ultimately, plaintiff declined to sign and instead filed a tax return as "married filing separate." Consequently, defendant allegedly incurred additional tax liability and penalties. Thus, he sought attorney fees and costs necessary to enforce the CSA and divorce judgment in amounts of $11,133.75 and $571.50 respectively. Further, defendant requested enforcement of the benefit and tax provisions of the divorce judgment and attorney fees and costs caused by plaintiff.

In November 2017, plaintiff filed her answer to defendant's motion for attorney fees and costs. Plaintiff acknowledged that the trial court ordered her to pay $7,053 for home expenses, but asserted that the issue required court intervention because defendant operated his business from the basement of the home and the rent was paid by the business. Additionally, plaintiff claimed that defendant had access to the EOBs through Blue Cross and Blue Shield (BC) online at least until June 7, 2017. Instead of acting with due diligence to obtain the information defendant needed, he repeatedly blamed plaintiff for his shortcomings. Further, plaintiff allegedly contacted BC on two occasions, learned that defendant could obtain the EOBs for his own account, and requested BC send defendant the EOBs. Plaintiff admitted that she did not want defendant to know her address because of prior years of "verbal and emotional abuse." She nonetheless denied any attempt to circumvent defendant's receipt of necessary information and expressed her goal to "sever every conceivable tie with the defendant."

In her response to defendant's motion, plaintiff denied a relationship with Dr. Hoppe at the time of the CSA, but the pleading admitted they were dating "at the time of the Judgment of Divorce." Despite the relationship, plaintiff denied making any effort to frustrate the delivery of the firearms. She further denied disclosing any terms of the CSA, but alleged that defendant attempted to have Dr. Hoppe sign an affidavit that divulged contents of the CSA, and therefore, that document should be sealed. More importantly, defendant tried to have plaintiff violate federal firearms law by having her transfer the weapons to him instead of a direct conveyance by Dr. Hoppe to defendant as the transferee. Addressing the tax returns, plaintiff contended that defendant untimely pursued the tax returns and demanded that she sign a return that her own accountant could not closely examine and verify. After consulting with a certified public accountant (CPA) regarding liability for civil and criminal penalties and his expert opinion that defendant's joint tax return was prepared incorrectly, plaintiff timely filed her own individual tax return. Defendant could not blame a loss of tax savings on plaintiff when he obstructed the timely filing. Finally, plaintiff denied that her conduct caused defendant to incur attorney fees, but blamed his own actions for the delay in firearm delivery and other issues. She contested over 26 entries of attorney fees submitted by defense counsel for a failure to delineate the subject matter of the service or the failure to correlate the entry to enforcement of the CSA or divorce judgment.

-5-

On November 22, 2017, the trial court heard oral argument on the attorney fees motion. Defendant argued that he was entitled to attorney fees and costs for the efforts expended in obtaining the return of the firearms. Additionally, plaintiff agreed in the CSA to assist in defendant's retention of health benefits and to file a joint income tax return. Although defense counsel requested over $11,000 in attorney fees, he subtracted from that amount the time expended on the medical records and CSA breach issues that had been withdrawn. Defense counsel did not bring witnesses to the hearing to address reasonableness of his requested attorney fees. The trial court concluded that it would hold an evidentiary hearing regarding attorney fees.

Despite the trial court's decision to conduct a hearing, plaintiff was given the opportunity to make a record. Plaintiff's counsel noted that defendant was in contact with BC, and he was given specific guidance and the necessary forms to fill out for insurance. Addressing the tax issue, plaintiff purportedly reached out to defendant when the tax deadline was approaching. When no response was received, she communicated with the couple's tax preparer. In turn, the tax preparer contacted defendant, and defendant fired him. Because defendant prevented the timely presentation of a joint tax return, plaintiff necessarily had to file separately, and her accountant had an opinion about the loss and benefit of that action. The trial court agreed that expert witnesses could be called at the hearing.

In July 2018, plaintiff filed her own motion for CSA sanctions and liquidated damages. She claimed that defendant violated the terms of the CSA on eight occasions, and the CSA contained a liquidated damage provision of $5,000 for the first violation, $10,000 for the second violation, and so on. Plaintiff alleged that she was entitled to $180,000 in liquidated damages for defendant's violations as well as recovery of attorney fees.

On August 23, 2018, the trial court held a hearing on plaintiff's liquidated damages motion. Defense counsel stated that he was waiting for resolution of a home repair and financing issue before pursuing his attorney fee sanctions. With regard to the tax issue, plaintiff's counsel asserted that defendant submitted the tax returns to her on October 12, 2017, but when plaintiff gave them to her accountant, he advised that they were incorrect. Therefore, plaintiff was forced to submit her own return as married, filing separately, and incurred an additional $2700 in taxes. On the contrary, defendant asserted that plaintiff was at fault for causing him to incur an additional $2700 in taxes.

At this hearing, Michael S. Flintoff, plaintiff's CPA, testified that he reviewed a joint tax return and a married filing separate tax return prepared by Dave Remick, an attorney who also acted as an accountant, but was not a CPA. Flintoff expressed concern with the tax returns because the property taxes were not itemized and the underlying documentation pertaining to the income tax return for defendant's business was not submitted for vetting. Because the business acted as a "pass through" company and took aggressive deductions, Flintoff advised that there was the possibility of an audit and personal tax liability. To avoid potential liability, Flintoff advised plaintiff to file separately or file on a joint return basis if she could obtain a hold harmless provision from defendant. It was generally "cheaper" to file on a joint basis. Because of the limited timeframe, Flintoff was unable to negotiate a hold-harmless agreement for plaintiff and opined that there were "control" not economic issues involved with defendant.

Flintoff testified that the joint tax return with itemized deductions that he prepared for the parties resulted in a refund of $640. The tax return that he submitted for plaintiff with a standard deduction resulted in a refund of $261. Although Flintoff did not review the divorce judgment, he was told that it provided for a joint tax return. When asked why he did not advise plaintiff to seek a modification of the tax provision in court, Flintoff testified that the need to file a tax return in three days eliminated the "possibility of a quick and speedy resolution." He did not want plaintiff to be subject to a late filing penalty, and advised her of the potential economic consequences of the divorce judgment. In considering the choice, plaintiff had to minimize the risk associated with filing a joint return and to protect herself because her signature on the tax return represented that the return was true and accurate, subject to a penalty of perjury. The hearing was continued.

In September 2018, defendant sought court assistance pertaining to the refinancing of the marital home to allow him to remove plaintiff's name from the existing mortgage. On September 26, 2018, the trial court held a hearing on defendant's motion to compel plaintiff to sign a release to allow work to be done on the former marital home in order to facilitate defendant's refinancing of the property. The refinancing would permit defendant to discharge plaintiff from any liability on the home. However, defendant was also involved in litigation with the builder of the home. The builder agreed to a settlement, but insisted on having a release from both defendant and plaintiff. Plaintiff's counsel responded that defendant asked for favors from plaintiff without regard to her needs and opined that refinancing should occur within a certain period of time to resolve the case. The trial court noted that the litigation with the builder was *pending in another court*, and therefore, the issue of settlement approval or release was "nonexistent" in this case. It further opined that the settlement and refinancing were separate and distinct issues. The trial court apprised the parties to return in November, and the motion was denied without costs or attorney fees.

The evidentiary hearing resumed in February 2019. The parties advised that the home ownership issue was resolved with plaintiff's name removed from the deed. Plaintiff's counsel then proceeded to introduce documentary evidence to support the claim that defendant violated the CSA by disclosing confidential information and sought $180,000 in liquidated damages for the eight violations. In contrast, defendant submitted a binder of documents that indicated that some of the disclosures were necessary, permissible, and contemplated by the parties.[5]

For the defendant, Patricia M. Ouellette, attorney, CPA, and spouse of Remick, testified that she prepared a 2016 joint income tax return for the parties and a separate income tax return for defendant. Ouellette concluded that the 2016 tax return, if submitted as married filing jointly, would have resulted in a refund of $1436, and defendant would have received $718. However, defendant instead paid $1160 in taxes using the married, but filing separately return because he did not have withholdings. Also, he owed $163 in state taxes, but was further assessed penalties and costs. Thus, if the parties had filed jointly, a *net* refund of $1255 would have been obtained with each party receiving $628. Ouellette opined that it cost defendant $2,180 to file separately as

---

[5] Although plaintiff initially sought to pursue a cross appeal addressing the denial of her motion for liquidated damages, the parties stipulated to dismiss the cross appeal.

opposed to a refund of $628 if he filed jointly. Ouellette opined that the divorce judgment required the parties to file a joint tax return, share any refund, and pay any costs.

On May 21, 2019, the hearing resumed to address defendant's request for attorney fees. Ouellette was recalled to provide testimony addressing the reasonableness of the fees. To reach an opinion on reasonableness, Ouellette reviewed motions, pleadings, transcripts, emails, documents, letters, subpoenas, and the complete billings. She examined the charges pertaining to firearms, taxes, QDRO, and house expenses by evaluating the date, the charge, and the activity performed. After reviewing the written pleadings and hearings, Ouellette allocated $15,669 in reasonable attorney fees for firearms. She opined that although it was "ludicrous" to spend multiple hearings on the issue of firearms, and the attorney fees "were necessary."

With regard to taxes, Ouellette testified that the divorce judgment required that the parties "shall" file a 2016 joint tax return with shared refunds and liabilities, but it was not filed. A joint tax return was prepared close in time to the due date of October 15, 2017, and she opined that despite the late preparation date, the return could have been filed timely or amended after the filing date. Because of the difficulty obtaining tax records, Ouellette opined that $9,713.02 was expended in attorney fees for the total time it took to address the income tax issue. Additionally, $849 in reasonable attorney fees was expended to prepare the QDRO. Ouellette also opined that $1,764.81 was a reasonable attorney fee for enforcement of the divorce judgment pertaining to the household expenses. With regard to the claim for reimbursement for attorney fees for refinancing the marital home, Ouellette noted that it was in plaintiff's best interests for defendant not to secure refinancing because the home would be sold and plaintiff would receive some of the proceeds. Further, it was alleged that plaintiff attempted to shorten the time period allotted for refinancing. Therefore, Ouellette opined that the $5,244.27 requested for attorney fees was reasonable. She also asserted that $1,707 was a reasonable attorney fee incurred for litigating issues pertaining to the CSA. Finally, Ouellette submitted her fees for examining the tax returns in the amount of $4,590 and for her expert testimony regarding reasonableness of the attorney fees, charging $22,050. Her hourly rate for services was $300.

On September 18, 2019, the final date of the evidentiary hearing occurred. On cross-examination, Ouellette acknowledged she testified that the over $15,000 in attorney fees was reasonable to address the firearms issue, but she had no information regarding plaintiff's failure to facilitate a prompt transfer. Rather, she asserted that the CSA contained a facilitation requirement and the firearms dealer was plaintiff's boyfriend. She also testified that $14,000 in attorney fees and expert fees were reasonable and necessary to reach a conclusion regarding the proper amounts of taxes owed, despite the fact that the potential refund at issue totaled $2,180. Additionally, Ouellette continued to assert that the over $5,400 requested pertaining to the refinancing and release was necessitated by plaintiff while acknowledging she was unaware to what extent plaintiff caused any delay in signing the release and whether plaintiff's signature had any bearing on refinancing.

Plaintiff's expert, local family law attorney Robin Omer, disagreed that the over $15,000 requested for the firearms issue was reasonable. The CSA was signed in February 2017, and the divorce judgment was signed in June 2017. The correspondence during that time period did not involve plaintiff or indicate that she was uncooperative in transferring the firearms. There was a

stipulation reached by the parties regarding the recipient of each firearm. Therefore, it was the dealer who needed to make the transfer, and that correspondence reflected scheduling issues.

With regard to the tax returns in this acrimonious divorce, Omer opined that plaintiff had to exercise due diligence and examine the documents prepared by the opposing party, particularly where the defendant fired the couple's tax preparer. A new preparer could miss pertinent material. Indeed, Flintoff recommended that plaintiff not sign the joint tax return prepared by Remick citing the fact that it was missing information. Omer opined that although plaintiff may not have complied with the tax term of the divorce judgment, she had little recourse in light of the delay in receiving the documents from defendant in relationship to the tax deadline. Further, Omer opined that the amounts expended on accountants and lawyer expert fees for a tax return that generated a penalty or refund of $2,000-3,000 was simply "ridiculous." He stated that $14,000 in expert fees demonstrated a party's "matter of principle," when a cost-benefit analysis would not warrant such an expenditure in light of a $600 refund.

Omer opined that the over $5,000 requested for the home refinancing issue could have been mediated or resolved for lesser expense. He also testified that plaintiff did nothing improper by refusing to sign the release because she still owned the property, was still subject to a mortgage, and still had the potential for liability. Omer further concluded that the attorney fees submitted by plaintiff's attorney were "low."

Although the attorneys did not call plaintiff and defendant to testify, plaintiff's counsel made an offer of proof regarding testimony. Specifically, plaintiff would have testified that she did nothing to interfere with the delivery of the firearms, but rather did everything in her power to efficiently turn the guns over to defendant within the bounds of federal law. Defense counsel presented an offer of proof that plaintiff had responsibilities under the CSA to guarantee and indemnify defendant for the firearms, but the documentation demonstrated the defense efforts to secure the firearms. The parties submitted closing argument in written briefs.

On November 21, 2019, the trial court issued its extremely thorough and well-written 42-page opinion and order denying relief and attorney fees. In the opinion, the trial court expressed that, although the issues raised involved obtaining compliance with the CSA and divorce judgment and the recovery of attorney and expert witness fees necessary to enforce the documents, the judgment was effectively the beginning of the litigation because the case presented the continuation of the parties' discord. It further noted that, although "no stone" was left unturned in the presentation of pleadings, briefs, arguments, experts, and documentary evidence, the parties were not called to testify. The trial court expressed that it essentially served as the trustee of the marital estate, however, the parties seemed more concerned with engaging in a battle designed "to right old wrongs." The trial court further characterized the parties' disputes as a "scorched earth War of the Roses legal battle" that was not directed by the attorneys, but by the clients without any cost-benefit analysis of the outcome on the assets. It noted that the documents governing the parties' dispute were the CSA and judgment of divorce. However, before the judgment of divorce was entered on June 2, 2017, defendant filed a motion seeking enforcement and a possible violation of the CSA in what the court labeled the "opening salvo."

In discussing the firearms issue in which it was learned the parties had not agreed to the division of the firearms, the trial court reflected that it should not have entered the judgment of

divorce until the pending motions addressing the parties' disagreements were resolved.[6] The court then summarized the motions, hearings, and admitted evidence that the parties introduced to support their claims for attorney and expert witness fees and liquidated damages.

Ultimately, the trial court concluded that the requests for attorney fees was borne from a "matter of principle" and not a "cost-benefit" analysis when tens of thousands of dollars was expended on the 2016 joint tax return, yet $2,180 dollars was at issue. Further, the motions reflected a "struggle for control and vindication" when, in response to defendant's motion for nearly $76,000 in attorney and expert witness fees, plaintiff filed a motion for liquidated damages of $180,000. While plaintiff asserted that defendant's motions were designed to control and punish her for leaving him, defendant asserted that plaintiff was noncompliant and misleading and on a mission to exhaust defendant's resources.

First, the trial court denied plaintiff's claim for liquidated damages, concluding that any defense disclosures were made within the course of the litigation, the parties never moved to seal the file, and the liquidated damage provision was solely punitive and not compensatory. The trial court denied defendant's request for attorney and expert witness fees pertaining to the joint tax return issue. Although the judgment provided for a joint tax return, the trial court noted that defendant undertook the responsibility to prepare the return, fired the couple's tax preparer, failed to deliver the proposed return to plaintiff until days before the deadline, and caused plaintiff to seek an independent CPA who found problems with the joint tax return. Under the circumstances, the trial court concluded that plaintiff was "justified" in filing married, but separate, in light of defendant's actions. The trial court concluded that the attorney and expert witness fees were incurred and should be paid. However, it held they were not reasonable and necessary to enforce the CSA and the judgment, but were incurred to "advance the goals of the parties" and reflected their continuing battle.

The trial court also denied the defense request for attorney fees pertaining to the transfer of the firearms, determining there was a lack of evidence that plaintiff failed to ensure the timely transfer. The request for attorney fees pertaining to the home refinancing and release was denied because the parties resolved the issue. The trial court declined to award attorney fees pertaining to the award of home expenses to defendant, concluding that it was a legitimately contested motion. Finally, the trial court declined to award any attorney fees for the preparation of the QDRO. In conclusion, the trial court stated, "The request that attorney fees should be borne in whole or part by the other party is not reasonable given the circumstances and conduct of the parties. For purposes of taxing the adverse party, the fees were neither objectively reasonable nor necessary. This was litigation and these were expenses that neither party ever had to bear. . . . Neither of them is being penalized for their mutual choice to do battle and deploy every

---

[6] When the parties appeared for hearings, the trial court would indicate that the next day or two was available for a continuation of the evidentiary hearing. However, many months passed between the hearings. In addition to reflecting that it should have delayed the entry of the judgment until additional issues were resolved, the trial court also expressed regret that it failed to require that the parties' appear for successive hearing dates.

conceivable weapon in the struggle. But the Court should not reward that choice by shifting the costs of war to one party when both are at fault."

## II. APPLICABLE LAW

In Michigan, attorney fees are generally not recoverable as an element of costs or damages unless permitted by statute, court rule, a common-law exception, or contract. *Skaates v Kayser*, ___ Mich App ___, ___; ___ NW2d ___ (2020). Additionally, in an action for divorce, attorney fees may be awarded by statute, MCL 552.13(1) or court rule, MCR 3.206(D)(1). A party who requests attorney fees and expenses must allege sufficient facts to demonstrate that those fees and expenses were the result of the other party's refusal to comply with a prior court order despite having the ability to comply. MCR 3.206(D)(2)(b).

This Court reviews a trial court's decision whether to award attorney fees and the decision regarding the reasonableness of the attorney fees for an abuse of discretion. *Teran v Rittley*, 313 Mich App 197, 208; 882 NW2d 181 (2015). A trial court abuses its discretion when it selects an outcome outside the range of reasonable and principled outcomes. *Id.* The trial court's factual findings underlying an attorney fee decision are reviewed for clear error. *Loutts v Loutts*, 298 Mich App 21, 24; 826 NW2d 152 (2012). A finding is clearly erroneous, if, upon a review of the entire record, the reviewing court is left with a definite and firm conviction that the trial court made a mistake. *Lueck v Lueck*, 328 Mich App 399, 404; 937 NW2d 729 (2019). Questions of law are reviewed de novo. *Loutts*, 298 Mich App at 24. A divorce judgment entered as a result of a settlement agreement reached by the parties represents a contract, and, if unambiguous, presents a question of law. *Lueck*, 328 Mich App at 404.

## III. DOCKET NO. 351858

## A. TRANSFER OF FIREARMS

Defendant first alleges that the trial court erred in denying his motion for attorney fees and costs arising from plaintiff's failure to ensure delivery of the firearms within 15 days of Dr. Hoppe's receipt of final federal approval. We disagree.

The divorce judgment contained a provision entitled "Enforcement Expenses," stating:

> In the event any party to this action defaults in the performance of any of the obligations herein set forth, and it becomes necessary to initiate legal proceedings to effectuate performance of any provisions of this Consent Judgment of Divorce or the CSA, the party found to be in default shall pay expenses, including reasonable attorney fees, incurred in connection with such enforcement proceedings.

Additionally, the CSA contained a provision that plaintiff assumed full responsibility for "ensuring that [defendant] receives his firearms from the Dealer within 15 days after the Dealer receives [defendant's] firearms and all federal permitting approvals." Plaintiff further agreed to indemnify defendant for all costs in ensuring compliance with this provision.

-11-

On May 17, 2017, defendant filed a motion to enforce the CSA and contended that plaintiff breached her obligation to ensure that defendant receive his firearms within 15 days of the dealer's receipt of final approval. It was further claimed that plaintiff admitted to defendant that she would not comply. Defendant then later amended his initial motion on July 11, 2017, and moved for attorney fees pertaining to firearms on November 15, 2017.

Despite these multiple motions and hearings requesting attorney fees, the trial court declined any attorney fees for pursuing this issue. First, the trial court acknowledged that it agreed to address attorney fees "at a later hearing if necessary." It also noted that defendant filed a motion pertaining to this issue in May 2017, but the guns did not change hands until July 18, 2017. The trial court further acknowledged that plaintiff and Dr. Hoppe were never called as witnesses. Thus, there was no testimonial evidence presented to confirm their involvement in a dating relationship.

Nonetheless, the trial court concluded that a relationship was not dispositive of the issue. Rather, the proofs indicated that Dr. Hoppe and his counsel, Martinez, corresponded with defendant and his attorney to transfer the weapons. Therefore, the trial court denied defendant's request for $15,670 in attorney fees. Specifically, the trial court held:

> In sum the Court is persuaded that [defendant] has failed to prove it more likely than not that [plaintiff] failed to "ensure" the timely transfer of the firearms and the attorney fees requested are therefore not granted. With [defendant's] consent the issue could have been easily addressed in a show cause hearing for civil contempt directed to [plaintiff] with both she and Mr. Hoppe called as witnesses. Both [plaintiff] and Mr. Hoppe were represented already by their retained attorneys and the simple issue would be, "Why doesn't [defendant] have his firearms?" Scheduling such hearing often means they never need to occur.

We conclude that the trial court did not abuse its discretion in failing to award attorney fees for filing motions and subpoenas to obtain the transfer of the firearms. First, defendant filed his motion on May 17, 2017, when the parties had executed a CSA, but were in the process of incorporating the CSA into a consent judgment of divorce and submitting the judgment to the trial court. Thus, although the parties had reached an agreement, the trial court had not been privy to the document or reduced it to a judgment or order. Furthermore, Dr. Hoppe, an acupuncturist and firearms dealer, retained an attorney, Martinez, to advise him of federal firearms laws to ensure that he was in compliance. Martinez opined that Dr. Hoppe could transfer the guns to *defendant* following the entry of the divorce judgment if defendant completed the necessary forms.

Curiously, defendant never called plaintiff or Dr. Hoppe to testify regarding the nature of their relationship and whether or not they deliberately obstructed the firearm delivery. Rather, plaintiff asserted that, consistent with the representations by Martinez, she could not receive the firearms that belonged to defendant as an intermediary because it would subject her to criminal liability. Indeed, defendant also did not produce an expert in firearms to attest that plaintiff could or should have received the firearms and transferred them to defendant. Moreover, at the hearing on May 26, 2017, Martinez brought a spreadsheet delineating the firearms and requested a designation regarding the party who should receive each gun because the dealer did not have information to determine the recipient. Defense counsel noted that 10 guns were at issue and would be owned by a trust, but the owner would not be named on the record at that time. Thus,

it is unclear how defendant expected Dr. Hoppe to turn over the firearms to him: (1) when a judgment of divorce had not yet entered; (2) when defendant failed to present expert testimony that demonstrated Dr. Hoppe had the authority to turn over the weapons to plaintiff for delivery to defendant; and (3) where defense counsel declined to facilitate the transfer by identifying the recipient of each firearm. More importantly, defendant did not call plaintiff or Dr. Hoppe to testify such that the trial court could have assessed their credibility pertaining to this issue.

Under the circumstances, the trial court's decision to deny attorney fees for a purported failure to comply with the CSA and divorce judgment provisions regarding transfer of firearms was not an abuse of discretion. *Teran*, 313 Mich App at 208. The trial court scheduled an evidentiary hearing to address attorney fees, but *never confirmed that an award of some amount would be granted*. Further, the trial court's erroneous declaration that there was no evidence of a romantic relationship between plaintiff and Dr. Hoppe (when plaintiff's response to the motion to enforce the CSA acknowledged a relationship) did not establish that plaintiff thwarted the transfer of the firearms. Rather, the trial court held that defendant failed to meet his burden of proof in demonstrating that plaintiff interfered with the delivery of the firearms. Finally, the trial court concluded that the appropriate recourse was a show cause to pursue civil contempt involving Martinez and Dr. Hoppe to facilitate the execution of the transfer. Even though the CSA and the divorce judgment imposed obligations on the parties to facilitate the property division, the trial court did not abuse its discretion by failing to award attorney fees when it became apparent that Dr. Hoppe had the firearms in his possession as a licensed dealer, and his attorney advised that there could be potential liability issues if the weapons were transferred to plaintiff to act as an intermediary with defendant.

## B. MARITAL HOME EXPENSES

Defendant submits that the trial court erred in failing to award him costs and attorney fees because plaintiff was found in default of her obligation under the divorce judgment to pay all expenses for the marital home during her exclusive occupancy. We disagree.

As an initial matter, we again note that defendant filed the motion to enforce the CSA on May 17, 2017. However the CSA was to be incorporated into the divorce judgment, and the judgment did not enter until June 2, 2017. Thus, defendant initiated the motion *before the judgment had even entered*, and his characterization that he was enforcing the judgment was erroneous. Furthermore, it is unclear why defendant immediately sought to declare plaintiff in breach of her obligation instead of seeking a declaration that plaintiff be held responsible for the costs. This request for clarification would have been the more prudent approach in light of defendant's continued operation of his business at the marital home plaintiff occupied.

Addressing the marital expenses, the trial court concluded:

At the July 18, 2017 hearing the Court ordered [plaintiff] to pay [defendant] $7,053 in expenses the Court determined she owed him for home expenses. This was a legitimately contested motion and attorney fees in the requested amount of $1765 are not awarded.

-13-

The judgment of divorce contained a "Debt and Indemnity" section, and it provides in relevant part:

> The parties shall indemnify and hold each other harmless from the obligations in this Consent Judgment of Divorce and contractually agree that if any party pays any of the debts to which another is responsible pursuant to the provisions of this Consent Judgment of Divorce, whether as a result of a judgment or a voluntary payment to protect that person's credit rating, the party responsible for the debt shall immediately reimburse the other the amount paid. However, no party shall pay a debt for which another is responsible unless the debt is in default. The parties agree that in the event that a party fails to reimburse another as provided above within thirty (30) days, the party entitled to reimbursement may petition the Court to obtain a judgment for the amount owed, including interest, costs, and reasonable attorney fees.

> No party, after the execution of the CSA, will make a commitment to incur any obligation in another party's name, or secure or attempt to secure any credit in another party's name. The parties will pay all debts and discharge all financial obligations that they have made in their respective names during the pendency of this divorcee proceeding and each party will indemnify each other against, and hold each other harmless from all such debts and financial obligations.

> *With respect to debts for which more than one party may be liable, whether or not the debt was incurred by only one party, the parties shall assume and pay the debts as set forth herein.* [Emphasis added.]

The trial court did not abuse its discretion by denying attorney fees when the trial court ordered plaintiff be responsible for $7,053 in marital expenses. Although plaintiff was awarded exclusive occupancy of the marital home between the fall of 2016 and February 2017, there was no dispute that defendant operated his business out of the marital home. Accordingly, there were expenses attributed to the operation of the business such as electricity and waste management. Furthermore, plaintiff alleged that defendant withdrew corporate funds for payment of rent and electricity. The unique scenario presented by plaintiff's sole occupancy of the marital home that housed defendant's business and his computer servers was not a circumstance that was expressly addressed by the CSA or divorce judgment. Although it was appropriate to conclude that plaintiff be held responsible for the expenses while staying in the marital home, it was similarly appropriate for defendant to be responsible for the expenses caused by his operation of his business in the home, particularly when he withdrew funds to pay rent and utilities for his business. Thus, under the circumstances, it was proper for the trial court to resolve the issue of outstanding expenses in light of the language in the divorce judgment contemplating that more than one party may be liable for a debt. The fact that defendant filed a motion and obtained payment of expenses does not necessarily warrant attorney fees. Because a debt was incurred for which both parties could be held responsible, defendant's filing of the motion did not necessarily indicate default or misconduct on plaintiff's part. The trial court's resolution of this issue did not constitute an abuse of discretion. *Teran*, 313 Mich App at 208.

## C. JOINT TAX RETURN ATTORNEY FEES AND EXPENSES

Defendant next contends that the trial court improperly denied his request for costs and attorney fees when plaintiff violated the tax provision of the divorce judgment and he incurred fees in an attempt to enforce the judgment. We disagree.

The judgment of divorce addressed the 2016 income tax returns as follows:

> The parties shall file joint 2016 federal, state, and local individual income tax returns and equally share in the costs to prepare and file the returns, any refunds, and any liabilities.

Although the divorce judgment contained this provision, plaintiff nonetheless filed as married but separate. Because she was the first person to file, this action required defendant file in a similar manner. However, despite plaintiff's noncompliance with the judgment, the trial court concluded that defendant's actions caused her to file in this manner. The trial court's opinion stated in pertinent part:

> The second example of the parties' shared agendas in this litigation is [defendant's] request for attorney fees and expert witness fees in connection with the tax issue. [Plaintiff] filed separately requiring [defendant] to do the same. That violation of the clear requirements of the judgment of divorce cost [defendant] about $2180. And now [defendant] seeks $9713 in attorney fees and a significant portion of his expert witness fees of $29,070.

However, the trial court also concluded that the facts did not warrant attorney or expert witness fees under the circumstances. Although defendant assumed the responsibility to have the returns prepared, he filed an extension from April to October 2017. Just before the extension deadline, defendant fired the tax preparer previously retained by the couple. Despite an earlier request by plaintiff's counsel to view the tax returns, defendant only provided the tax returns a couple of days before the deadline. At that time, plaintiff hired CPA Flintoff to review the joint tax return. Flintoff advised plaintiff to not sign the return because itemized deductions and source information underlying defendant's business were missing. In light of time constraints, Flintoff was unable to obtain an agreement for defendant to hold plaintiff harmless in the event of an audit or tax deficiency. Because of the upcoming deadline and deficiencies, plaintiff chose to file separately.

In declining to grant attorney or expert witness fees to either side, the trial court stated, in pertinent part:

> But [plaintiff's] noncompliance with the joint filing requirement is clearly justified by [defendant's] conduct. [Defendant put her at a disadvantage and this Court finds, from the direct and circumstantial evidence, that he did so unnecessarily and deliberately. *** This Court must in fact rely on circumstantial and secondary evidence because neither of the parties ever testified in this case for reasons best known to them. The Court could have and perhaps should have called them as witnesses. MRE 614(a) allows the Court on its own motion to call witnesses. The Court did not do so understanding that able and experienced trial counsel should be allowed to "try their case" and whether the clients testify is ultimately the client's decision.

The Court finds and concludes that [defendant's] claim for attorney fees and related expert witness [f]ees should be and hereby is denied. I am satisfied that those costs are neither objectively reasonable nor necessary. The reader will recall that both attorney fee experts testified as to whether those fees were reasonable and necessary. The Court is satisfied that is the standard and that, in the long run, neither party has carried the burden of proof to satisfy it.

In denying these two claims the Court is not saying that either [plaintiff counsel's] attorney fees or [defense counsel's] attorney fees should not be paid. They were incurred and paid to advance the goals of the parties. Both parties choose a battle based on principle to the exclusion of an objectively reasonable weighing of the benefits to be gained against the rising costs incurred. The parties hopefully have realized their goals. But the law allows for reasonable fees and "reasonable" implies an objective standard and that standard includes the cost-benefit rational analysis earlier discussed. Both the weak liquidated damage claim in light of the evidence and the attorney fee claim in light of [defendant's] conduct and the amount involved support leaving the parties with the fees they have voluntarily agreed to pay their attorneys.

The trial court's factual findings underlying a determination regarding attorney fees are review for clear error. *Loutts*, 298 Mich App at 24. Clear error occurs when the reviewing court is left with a definite and firm conviction that a mistake has been made after an examination of the entire record. *Lueck*, 328 Mich App at 404.

In light of these facts, the trial court did not clearly err in concluding that the factual circumstances underlying plaintiff's noncompliance with the divorce judgment did not warrant imposition of attorney and expert witness fees. The trial court noted that plaintiff's decision to file separately was necessitated by defendant's actions. Defendant delayed presenting the information to the tax preparer and did not respond to plaintiff's counsel's inquiry. After plaintiff's counsel contacted the couple's tax preparer, defendant fired that individual. Consequently, a new tax preparer, Remick, was hired. When the tax return was finally provided to plaintiff, she hired Flintoff to examine the return. He expressed concern that a deduction for real estate taxes was missing, and the documentation from defendant's "pass through" corporation that was used to calculate the couple's taxes was not provided. Because Flintoff did not have time to negotiate a hold harmless provision from defendant in the event an audit occurred, plaintiff was given her options and choose to file separately. As the trial court noted, defendant claimed to incur an additional tax liability of $2,180 as a result of plaintiff's actions. However, the trial court concluded that a cost-benefit analysis did not warrant $9,713 in attorney fees and $29,070 to litigate the issue. Indeed, defendant voluntarily chose to expend nearly $40,000 to recover $2180 to enforce the divorce provision. However, in choosing to litigate the issue, defendant ignored his conduct that led to plaintiff's decision to file separately. Because defendant failed to testify, there was no explanation as to: (1) why he fired the couple's prior tax preparer at the last minute when that person may have provided plaintiff with a level of comfort to sign off on the return; (2) why he waited until days before the deadline to submit the tax returns to plaintiff for her review; (3) why he did not submit the documentation underlying the preparation of the tax return to facilitate plaintiff's approval and signature; and (4) why he did not submit a hold-harmless agreement to plaintiff in light of his actions. Accordingly, the trial court's ultimate determination to deny

-16-

attorney and expert witness fees to defendant for litigating the noncompliance with the tax provision of the divorce judgment did not constitute an abuse of discretion.

For purposes of completeness, we note that defendant contends the decision in *Pirgu v United Servs Auto Ass'n*, 499 Mich 269; 884 NW2d 257 (2016) demonstrates that reversal is warranted. In *Pirgu*, the plaintiff suffered closed head injuries in an automobile accident and ultimately filed suit alleging the insurer assigned to pay the claim improperly discontinued paying benefits. The case proceeded to a jury trial with plaintiff seeking a recovery between $200,000 and $400,000. The jury awarded $70,237.44. After the trial, plaintiff's counsel requested $220,945 in attorney fees, asserting that he expended more than 600 hours prosecuting the case and his hourly rate was $350 an hour. The trial court found that the insurer unreasonably failed to pay, MCL 500.3148(1), but then noted that the jury granted a recovery of approximately 33% of the amount requested by plaintiff. Therefore, the court awarded $23,412.48 in attorney fees, or approximately 33% of the jury verdict. *Id*. at 271-272.

Our Supreme Court concluded that the trial court erred in its calculation. First, the Court concluded that the reasonableness of an attorney fee under MCL 500.3148(1) must begin with an analysis of the reasonable customary rate charged in the locality for similar services multiplied by the reasonable number of hours expended. *Id*. at 281. Thereafter, the trial court must consider: (1) the experience, reputation, and ability of the lawyer or lawyers; (2) the difficulty of the case in light of the legal questions involved and the necessary skillset to address the issues; (3) the amount in question and the result achieved; (4) the expenses incurred; (5) the nature and length of the attorney-client relationship; (6) the likelihood that acceptance of the case will preclude the lawyer from accepting other employment; (7) the time limits imposed by the client or the nature of the case; and (8) whether the fee agreement is fixed or contingent. *Id*. at 281-282. Nonetheless, these factors are not exclusive, and the trial court may consider other pertinent information. *Id*. at 282. To aid in appellate review, the trial court should briefly discuss the factors and delineate any additional factors deemed relevant. *Id*. Applying the above standard, the *Pirgu* Court concluded that the trial court improperly failed to analyze the baseline by determining a reasonable rate and reasonable hours. Furthermore, the trial court erred by principally relying on one factor, the amount sought and the result achieved. *Id*. at 282-283. Consequently, the Court vacated the fee award and remanded for an analysis in light of all the factors. *Id*. at 283.

Defendant contends that the *Pirgu* decision is applicable to the present case because the trial court solely compared the amount of the tax liability incurred (approximately $2,000) in light of the attorney fees and expert witness fees expended (nearly $30,000 in total) to deny the request. However, our review of the trial court's opinion reveals that it conducted a two-page analysis addressing the terms of the judgment, the circumstances surrounding the timeliness of defendant's preparation, the belated firing of the couple's prior tax preparer, and the submission of the tax returns without underlying documentation. The trial court's opinion as a whole insinuated that the parties were engaged in gamesmanship as demonstrated by a lack of key evidence presented by both sides. At the beginning of the trial court's opinion, it stated:

> Counsel for both parties have left no stone unturned in pleading, briefing, and arguing their clients' claims and defenses. At least no stone other than not calling either party for direct or cross-examination. They have offered volumes of documentary evidence together with lay and expert testimony.

We disagree with defendant's contention that *Pirgu* is dispositive. The trial court did not solely rely on the tax liability that defendant incurred as a result of plaintiff's filing and compare it to the fees expended to litigate the issue. Rather, the trial court noted the judgment requirement of a joint filing, defendant's unreasonable actions in waiting to file, firing the tax preparer, and limiting the time plaintiff had to review the joint tax return. Indeed, one who first breaches a contract cannot maintain an action against the other contracting party for the subsequent breach or failure to perform. *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994). Although the trial court did not expressly rely on this proposition of law, it seemingly applied this principle. That is, the divorce judgment designated that a joint return would be submitted with any refund or costs split between the parties. With regard to the execution of that provision, defendant undertook that responsibility. However, he did so in such a manner that plaintiff was precluded from having an opportunity to evaluate her potential liability in light of the tax return's deficiencies according to Flintoff, her CPA. Thus, the trial court essentially excused plaintiff's failure to file a joint tax return with defendant because of defendant's conduct in his delayed filing and unexplained firing of the couple's tax preparer. Defendant's challenge premised on *Pirgu* is without merit.

## D. RELEASE

Defendant further contends that the trial court erred in denying his request for costs and attorney fees expended in attempting to obtain a release from plaintiff to settle the litigation with the marital home builder which was allegedly necessary for defendant to obtain refinancing of the marital home and to remove plaintiff's name from the mortgage. Defendant acknowledges that the parties resolved the issue "on their own," but nonetheless defendant claims entitlement to $5,244 expended in attorney fees litigating the issue. We disagree.

In addressing this issue, the trial court stated:

> [Defense counsel] in his closing argument requests $5,244 in attorney fees on the issue of [defendant] refinancing the marital home he was awarded so as to discharge [plaintiff's] obligation on the mortgage debt. The confidential settlement agreement acknowledges that such refinancing is subject to repair of "porch and possible foundation problems" and goes on to say that "[Defendant] will refinance the marital home or remove [plaintiff] from any mortgage on the marital home as soon as reasonably possible after Eastbrook (the contractor allegedly at fault for the defects) resolves the defective porch construction and any related foundational problems.["] Once any necessary repairs are completed the agreement gives [defendant] 90 days to refinance (not the 30 as claimed by [plaintiff's counsel] at the September 26, 2018 hearing[)].

> The issue was whether [plaintiff] a joint owner of the home should sign a release of Eastbrook in connection with litigation pending in district court before or upon receipt of a discharge of her liability on the mortgage. The Court put the matter off to a hearing set for November 20, 2018 which was adjourned by counsel to February 27, 2019. By the latter date the issue was resolved.

> No attorney fees are awarded to [defense counsel] on this issue.

-18-

Defendant contends that plaintiff acted unreasonably, and therefore, an award of attorney fees is warranted despite the parties' ultimate settlement of the issue. We recognize that, "an award of legal fees is authorized where the party requesting payment of the fees has been forced to incur them as a result of the other party's unreasonable conduct in the course of the litigation." *Stackhouse v Stackhouse*, 193 Mich App 437, 445; 484 NW2d 723 (1992). "A trial court has the discretion to award such fees as are necessary and reasonable, and a court's determination in this regard will not be reversed on appeal absent an abuse of that discretion." *Id*. However, it should also be noted that when a party fails to dispute the basis of the trial court's ruling, this Court need not even consider granting the relief requested by the party-appellant. *Denhof v Challa*, 311 Mich App 499, 521; 876 NW2d 266 (2015).

Defendant fails to recognize that when this issue was raised below, the trial court held that any controversy was "nonexistent" in the divorce action because the issue of the settlement with the builder and any need for a release presented an issue for the district court where the builder litigation was pending. Specifically, on September 26, 2018, the trial court heard oral argument on defendant's motion to compel plaintiff to sign a release to allow work to be done on the former marital home in order to facilitate defendant's refinancing of the property that would permit a discharge of plaintiff from any liability on the home. Defense counsel advised that the release had been executed addressing construction work. However, defendant was also involved in litigation with the builder of the home. The builder agreed to a settlement, but insisted on having a release signed by both defendant and plaintiff. The trial court noted that the litigation with the builder was pending in another court, and the issue of the settlement approval was "nonexistent" in the divorce case. The trial court further opined that the builder's settlement and refinancing were separate and distinct issues. The trial court apprised the parties to return in November, and the motion was denied with no costs or attorney fees. When the parties returned to court, the issue of the release was settled. Accordingly, the trial court did not abuse its discretion by denying defendant's request for attorney fees arising from the motion to compel plaintiff to sign a release to facilitate the refinancing of the home.

## E. JUDGMENT ENFORCEMENT – EXPERT AND ATTORNEY FEES

Lastly, in this appeal, defendant contends that the trial court abused its discretion by denying $22,050 in expert witness fees and $11,130 in attorney fees that was necessarily expended to enforce the divorce judgment. We disagree.

Although the trial court concluded that plaintiff violated the 2016 joint tax return provision, it chose to decline to award the attorney and expert witness fees requested by defendant, stating:

> The second example of the parties' shared agendas in this litigation is [defendant's] request for attorney fees and expert witness fees in connection with the tax issue. [Plaintiff] filed separately requiring [defendant] to do the same. That violation of the clear requirements of the judgment of divorce cost [defendant] about $2180. And now [defendant] seeks $9713 in attorney fees and a significant portion of his expert witness fees of $29,070.

Defendant contends that the trial court improperly denied all expert and attorney fees, aside from the tax issue, without stating why the fees were unreasonable and without conducting an analysis of whether the attorney rates and hours were reasonable.

However, we cannot conclude that the trial court abused its discretion by denying expert witness and attorney fees. As noted by the trial court, the parties seemed intent on continuing a "war" and what should have been the end of the litigation turned into the beginning of the enforcement disputes. The trial court also concluded that the parties were intent on engaging in gamesmanship. Specifically, after defendant filed motions for costs and attorney fees seeking enforcement of the CSA and divorce judgment, plaintiff filed a request for liquidated damages in the amount of $180,000. The trial court found that the attorney fees were incurred, but determined that each party should be responsible for the costs and attorney fees in light of the games played. In light of the trial court's factual findings underlying its determination, we cannot conclude that the trial court's decision constituted an abuse of discretion. *Teran*, 313 Mich App at 208.

## IV. DOCKET NO. 352729

## A. REIMBURSEMENT TAX COSTS AND PENALTIES

Finally,[7] defendant alleges that the trial court improperly rewrote the divorce judgment by relieving plaintiff from the costs and penalties incurred by defendant when she failed to file the joint 2016 tax return as set forth in the judgment. We disagree.

Contrary to defendant's assertion, the trial court did not rewrite the parties' consent judgment of divorce and disregard contract principles. The trial court acknowledged the divorce judgment provision requiring a 2016 joint tax return be filed with shared refunds or liabilities. However, the trial court examined defendant's conduct and concluded that he deliberately hampered plaintiff's ability to timely review and evaluate the liability implications of signing a joint tax return without the underlying documentation provided. The trial court effectively considered that defendant undertook the obligation to prepare the joint tax return, but essentially breached that provision by his conduct, and thereby, excused noncompliance by plaintiff. Defendant's reliance on the language of the divorce judgment does not negate his inappropriate conduct and preclude the trial court from deviating from a strict interpretation of the judgment under the circumstances.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan

---

[7] Defendant also raised the issue of payment of attorney and expert fees for plaintiff's failure to file a joint tax return, an issue resolved in Docket No. 351858.

-20-